[Cite as *State v. Ogle*, 2013-Ohio-3420.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case Nos. 11CA29 |
| | : | 11CA32 |
| | : | 12CA2 |
| | : | 12CA11 |
| vs. | : | 12CA12 |
| | : | 12CA19 |
| | : | |
| | : | DECISION AND JUDGMENT |
| MELANIE A. OGLE, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 07/26/13** |

_____

APPEARANCES:

Dennis P. Evans, Connor, Evans, & Hafenstein, Columbus, Ohio, for
Appellant on Case No. 11CA29

Laina Fetheroff, Hocking County Prosecutor, and William Archer, Assistant
Hocking County Prosecutor, Logan, Ohio, Case Nos. 11CA29 and 12CA12.

Melanie A. Ogle, Pro Se, Rockbridge, Ohio, for Appellant, as to Case Nos.
11CA32, 12CA2, and 12CA19.

Benjamin E. Fickel, Logan, Ohio, for Appellant on Case Nos. 12CA11 and
12CA12.

Timothy P. Gleeson, Special Prosecuting Attorney, Logan, Ohio, for
Appellee, on Case Nos. 11CA32, 12CA2, 12CA11, and 12CA19

_____

McFarland, P.J.

{¶1} In this consolidated appeal, Defendant-Appellant Melanie A. Ogle appeals various judgment entries of the Hocking County Common Pleas Court in criminal case numbers 09CR0125 and 12CR0038. In case number 09CR0125, Appellant was convicted by a jury of assault of a peace officer, a violation of R.C. 2903.13(A)/2903.13(C)(3), and a felony of the fourth degree. [1] As to case number 12CR0038, Appellant entered an Alford plea upon a reduced charge of criminal damaging, a violation of R.C. 2909.06(A)(1), and a misdemeanor of the second degree. Having reviewed the record and the pertinent law, we find as follows:

> 1) Case No. 11CA29, all assignments of error are overruled and the judgment of the trial court is affirmed;
>
> 2) Case No. 11CA32, having affirmed the trial court's judgment in case number 11CA29, we conclude all assignments of error in case number 11CA32 are moot and appeal is dismissed;
>
> 3) Case No. 12CA2, the assignment of error is overruled and the judgment of the trial court is affirmed;
>
> 4) Case No. 12CA11, the assignment of error is overruled and the judgment of the trial court is affirmed;
>
> 5) Case No. 12CA12, the assignments of error are

---

[1] The trial court's judgment entry contains a clerical error in two places. The entry states Ogle was "found guilty of and has been convicted of Assault on a Peace Officer, in violation of R.C. 2903.13(A)/2903.13(C)(4), as a fourth degree felony." Ogle was charged and convicted of R.C. 2903.13(A)/2903.13(C)(3). Ogle has not raised an issue with regard to the clerical errors in the judgment entry in this appeal.

overruled and the judgment of the trial court is affirmed;

6) Case No. 12CA19, both assignments of error are
overruled and the judgment of the trial court is affirmed.

FACTS

**{¶2}** Ogle and Ohio Power Company have been engaged in civil litigation over the last several years. The disputes began with Ohio Power's desire to construct a telecommunications tower and obtain an easement through the Ogles' property. [2]

**{¶3}** Very generally, the facts relating to Appellant Melanie Ogle's conviction for assault on a peace officer are set forth as follows. On September 9, 2009, after work, Appellant and her husband returned to their residence on Donaldson Road around 5:20 p.m. to find Pike Electric and American Electric Power, (hereinafter "AEP") vehicles parked on Donaldson Road. AEP's contractors were constructing an electric line. The access to the Ogles' driveway was blocked by three trucks. Appellant and her husband began honking the horn and yelling at the workers.

**{¶4}** At the same time and place, Hocking County Sheriff's Deputy Trent Woodgeard (hereinafter, "Woodgeard") was working a special

[2] The details of the continuing litigation are set forth in the following cases: *Ogle v. Ohio Power Co.,* 180 Ohio App. 3d 44, 2008-Ohio-7042, 903 N.E. 2d 1284; *Ohio Power Co. v. Ogle,* 4th Dist. Nos. 09CA1 & 09AP1, 2009-Ohio-5953; *Ohio Power v Ogle,* 4th Dist. Nos. 10CA143, 10AP13, 2011-Ohio-3903; *Citizens of Hocking County v. Ohio Power Company,* 4th Dist. No. 11CA24, 2012-Ohio-4985; *Ogle v. Hocking Cty. Sheriff,* 4th Dist. No. 11AP13, 2012-Ohio-1768; and *Ogle v. Ohio Power Co.,* 4th Dist. No. 11CA27, 2012-Ohio-4986.

assignment on behalf of AEP to keep peace and order at the job site. Because of the commotion Appellant and her husband were making, Woodgeard decided to initiate contact. When he attempted to do so, Appellant and her husband failed to comply with requests he testified he made.   Instead, when able, the Ogles evaded Woodgeard and drove into their driveway. They testified they drove away because the officer was trying to get into their vehicle and they had done nothing wrong. Woodgeard pursued the Ogles and a physical confrontation ensued outside their residence between Woodgeard and Appellant.

{¶5}  As a result of the events which transpired on September 9th, 2009, Appellant was indicted by the Hocking County Grand Jury on one count of assault of a peace officer.  The case proceeded to jury trial and on August 11, 2011, the jury returned a verdict of guilty.  Appellant was sentenced to six months in a county jail,[3] a fine and restitution. Various appeals have followed Appellant's felony conviction.  For purposes of brevity, the facts relevant to each case number on appeal will be set forth more fully where applicable below.

Appellate case number 11CA 29

---

[3] Appellant was sentenced to "a county jail."  The transcript of the sentencing hearing stated: "[a]county jail that is not run or enforced by our local sheriff," presumably due to the strained nature of the relationship between Appellant and county officials indicated in this case and *Ogle v. Hocking County Sheriff, Hocking County Prosecuting Attorney,*  4th Dist. No. 11AP13, 2012- Ohio-1768.

ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.

II.   THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.

III.  THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE (Sic.).

Supplemental facts

{¶6} At trial, the State of Ohio presented testimony from Jason Stacy, Sheriff Lanny North, Trent Woodgeard, and Sgt. Kevin Groves.   Jason Stacy, a supervisor for AEP, testified AEP was slightly behind in their work on September 9, 2009.  The workers had just set a pole and were trying to connect the line.  Three trucks in fact were blocking the Ogles' driveway. The job site was loud due to the diesel trucks and the drilling that was being done.

{¶7} Stacy testified he was talking with Woodgeard when he heard aggressive and repetitive honking.  He could see someone in a black truck acting in a threatening manner and cursing.  At this point, he felt uncomfortable in turning his back. He saw Woodgeard go from one side of the truck to the other trying to get the situation calmed down.   Specifically,

he observed Woodgeard say to the female passenger "Calm down, knock it off." The truck sped away and Woodgeard followed in his vehicle. At this point, Stacy could not see what happened on the Ogles' property. Stacy testified it was the most threatening incident he had seen on the job.

{¶8} Sheriff Lanny North testified Woodgeard was employed by the Hocking County Sheriff's Department on the date of the incident. AEP had previously contacted the sheriff's office in order to obtain an officer to keep the peace at the job site on Donaldson Road. He acknowledged there was no written contract between AEP and the sheriff's department.

{¶9} Woodgeard also testified he was a full-time deputy with the Hocking County Sheriff's Office, working special duty on behalf of AEP when the altercation occurred. Woodgeard was wearing his deputy's uniform and driving a sheriff's cruiser. He had been authorized by the sheriff's department to do so.

{¶10} Woodgeard's version of the events leading to his assault began as he watched the Pike Electric and AEP workers on Donaldson Road. When Woodgeard heard honking and yelling, he also noticed the Ogles' truck parked in front of an AEP truck. He saw the passenger in the truck throw up her hands, moving around inside and yelling. He first decided to let her

vent.  An AEP employee went to move the AEP truck, but Mrs. Ogle continued to scream.

{¶11}  Woodgeard decided to address the situation with Appellant so he walked to the passenger side of the truck, made direct eye contact with her, and asked her to step outside. [4] She did not comply and continued to yell.  Woodgeard placed his hand on the passenger side door and the Ogles drove away at a high rate of speed. Woodgeard radioed for assistance and followed the Ogles into their driveway in his cruiser.

{¶12}  According to Woodgeard's testimony, once on the Ogle's property, Appellant came charging at Woodgeard, irate and belligerent.  She actually made contact with Woodgeard's face with papers[5] in her hand. Woodgeard asked Appellant to "calm down" repeatedly, but Appellant was trying to kick Woodgeard while her husband was trying to hold her back. Woodgeard advised Mr. Ogle to step back, that Appellant was under arrest for disorderly conduct. Woodgeard testified Mr. Ogle stepped back, but again, Appellant would not comply. Woodgeard took Appellant's right arm and attempted to handcuff her.  Appellant continued kicking Woodgeard's

---

[4] Woodgeard knew Melanie Ogle as he graduated from high school with her son.
[5] These papers, Appellant testified, consisted of a copy of an Ohio Attorney General's opinion regarding the township's authority to issue permits and supported her belief  AEP was "breaking the law by blocking their driveway."

shins and she kicked his genitals once. Woodgeard then used pepper spray to subdue Appellant.

{¶13} At this point, Mr. Ogle came towards Woodgeard and was advised to stay back. When Mr. Ogle refused to comply, Woodgeard deployed pepper spray at him. When the spray took effect, Appellant buckled and fell to the ground. Appellant and Woodgeard continued to struggle in the yard. Woodgeard was eventually able to handcuff her and place her in a cruiser.

{¶14} Sergeant Kevin Groves also testified Woodgeard was working special detail on September 9th. Sgt. Groves was present in the sheriff's office when Woodgeard radioed for backup. Groves responded to the scene and saw Woodgeard in distress. Groves ordered photographs be taken and he took a recorded statement from Mr. Ogle.

{¶15} After Groves' testimony, the State offered its exhibits and rested. The defense made a Crim. R. 29 motion, specifically arguing the State had not presented sufficient evidence Woodgeard was a law enforcement officer acting in an official capacity at the time and further, there was no sufficient evidence as to the remaining elements of the offense. The motion was denied. The defense proceeded with its case and witnesses Jesse Ward, Randall Thompson, Charles Ogle, and Melanie Ogle.

{¶16}  Jesse Ward testified he was working for Pike Electric on the incident date.  He saw a black pickup arrive on Donaldson Road as he worked nearby.  Mr. Ward heard screaming, but denied hearing curse words or feeling threatened.

{¶17}  Randall Thompson also testified he worked for Pike Electric and was present that day.  He acknowledged the job site was loud and it was "difficult to hear."  He testified the voices that were yelling did not interrupt his work.

{¶18}  The Ogles' collective version of the events unfolding on Donaldson Road and on their property differs somewhat from that presented by the State's witnesses. Charles Ogle testified when he and his wife reached home and found their driveway blocked, they stopped the truck and waited for "close to a minute" before he began honking and the couple began screaming.  He testified Appellant yelled "you bastards have no right to be blocking the road!"  His own words were "move your fucking trucks."

{¶19}  After the commotion began, the workers dispersed and the deputy came at the Ogle's truck quickly and aggressively.  The officer said something Mr. Ogle could not hear.   The officer tried the doors.  As soon as the road was clear, Ogle turned into his driveway towards his house. He and his wife began to unload groceries and other items from their truck when

they heard and saw a vehicle proceeding up their driveway. Soon Woodgeard was walking towards them with handcuffs, while Appellant was walking towards Woodgeard, waving papers in his face. The officer told Appellant to "put her hands out." The Ogles began backing away from the officer. Woodgeard attempted to handcuff Appellant. When the Ogles reached their sidewalk, Woodgeard pepper- sprayed Appellant, then her husband. Appellant and Woodgeard struggled. Appellant was slammed to the ground. Mr. Ogle was pepper-sprayed a second time. Woodgeard was walking towards Appellant, and she kicked out. Mr. Ogle testified "I believe she made contact."

{¶20} On cross-examination, Appellee played Mr. Ogle's recorded statement to Sergeant Groves for the jury. This was allowed after the trial court listened to the CD and determined there were several significant inconsistencies between the statement and Ogle's testimony. On the CD, Mr. Ogle states Woodgeard told Appellant to get out of the vehicle, which contradicts his testimony that he could not hear what the officer said. On the CD, the jury also heard Mr. Ogle say: "Okay. She didn't want to be handcuffed because she didn't do anything wrong. Okay. And so, you know, he grabs hold of her and she kicks at him a couple of times and then, you know, this happens." Mr. Ogle informed there were a lot of things left

out of the oral statement. He admitted the audio tape was correct as a whole. On redirect, Mr. Ogle clarified Woodgeard "pepper-sprayed my wife before there was ever any kick."

{¶21} Appellant's testimony mirrored her husband's. She testified the officer was trying to get in their truck, so when able, they drove up their driveway. Outside their home and truck, Appellant began walking towards Woodgeard, intending to show him the papers. She was wearing a shoulder bag which contained her lunch pails and Kroger bags. In her words, the "next thing she knew, Woodgeard swung her around and maced" her. Appellant denied kicking Woodgeard before he maced her. After she was maced, she ran into the yard, in pain and screaming, trying to get her bearings and get into the house. She testified she made a "conscious decision" to drop her shoulder bag, so she could get away from Woodgeard. She was bent over looking at the ground, saw tan pants, and thought Woodgeard was coming at her again. Appellant testified she believed "he was going to tase [her]and [she] would die." Appellant testified she kicked in Woodgeard's direction and ran. She didn't know if she made contact with him. She testified she kicked out as reflex action, to protect herself.

{¶22}  On cross-examination, Appellant testified she never heard Woodgeard give directions or make commands. She believed Woodgeard wanted to arrest her and her life was in danger. He assaulted her.

A. STANDARD OF REVIEW

{¶23}  An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Dennison,* 4th Dist. No. 06CA48, 2007-Ohio-4623, 2007 WL 2570736, ¶ 9.  See, e.g. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781 (1979).

{¶24}  A sufficiency of the evidence challenge tests whether the state's case is legally adequate to satisfy the requirement that it contain prima facie evidence of all elements of the charged offense. See *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983), and *Carter v.*

*Estell* (CA 5, 1982), 691 F.2d 777,778.  It is a test of legal adequacy, rather than a test of rational persuasiveness. *Dennison,* supra at ¶ 10.

{¶25}  The standard of review for a Crim.R. 29(A) motion is generally the same as a challenge to the sufficiency of the evidence.  *State v. Hollis,* 4th Dist. No. 09CA9, 2002-Ohio-3945, 2010 WL 3294327, ¶ 19; *State v. Hairston,* 4th Dist. No. 06CA3081, 2007-Ohio-3880, 2007 WL 2181535, at ¶ 16; *State v. Brooker,* 170 Ohio App.3d 570, 2007-Ohio-588, 868 N.E.2d 683, at ¶ 8.  Appellate courts must determine whether the evidence adduced at trial, if believed, supports a finding of guilt beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St. 3d 380, 386, 678 N.E.2d 541(1997); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).  In other words, when reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. " *Hollis,* ¶ 20, citing *State v. Smith,* 4th Dist. No. 06CA7, 2007-Ohio-502, 2007 WL 3557274, at ¶ 33, quoting *State v. Jenks* at paragraph two of the

syllabus.  See, also, *Jackson v. Virginia,* 443 U.S. 307, 319 99 S. Ct. 2781 (1979).

{¶26}  The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence," *Hollis,* at ¶ 21; *Smith,* at ¶ 34, citing *State v. Martin,* 20 Ohio App.3d 172, 175, 484 N.E.2d 717 (1983). Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Smith,* at ¶ 34, citing *State v. Thomas,* 70 Ohio St. 2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶27}  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.  *Dennison,* supra at ¶ 11; *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin,* supra, at 175.  A reviewing court will not reverse a conviction where there   is substantial evidence upon which the court could

reasonably conclude that all the elements of an offense have been proven

beyond a reasonable doubt. *State v. Johnson,* 58 Ohio St. 3d 40, 41, 567,

N.E.2d 266 (1991); *State v. Eskridge,* 38 Ohio St. 3d 56, 526 N.E.2d 304

(1988), paragraph two of the syllabus. We realize that the evidence may

pass a sufficiency analysis and yet fail under a manifest weight of the

evidence test. *Dennison,* supra at ¶ 15. See, *State v. Brooker,* 170 Ohio

App.3d 570, 868 N.E.2d 683, 2007-Ohio-588, ¶ 16, citing *Thompkins,* supra.

## B. LEGAL ANALYSIS

**{¶28}** Appellant was convicted of assault on a peace officer, a

violation of R.C. 2903.13(A)(C)(3) [6]which stated:

> (A) No person shall knowingly cause or attempt to cause physical harm to another…
>
> (C) Whoever violates this section is guilty of assault, and the court shall sentence the offender as provided in this division and divisions (C)(1), (2), (3), (4), (5), and (6) of this section. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree…
>
> (3) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.

---

[6] The language quoted above is from the former version of R.C. 2903.13(A)(C), in effect at the time of Ogle's August 2011 trial. The statute has since been rewritten.

{¶29} Appellant's contention that there was insufficient evidence to convict her of assaulting a peace officer is two-fold: she argues (1) there was no evidence that she "knowingly" attempted to cause physical harm to Woodgeard; and (2) Woodgeard did not meet the definition of "peace officer" as required by the statute. Upon examination of the evidence admitted at trial, we disagree with Appellant and find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

> Was there sufficient evidence that Woodgeard acted as a "peace officer in performance of official duties" at the time of the alleged assault?

{¶30} We address Appellant's second argument under this assignment of error first, that Woodgeard did not meet the definition of "peace officer in performance of official duties" as required by statute.   A "peace officer" includes a deputy sheriff.  R.C. 2935.01(B).  In *State v. Ford,* 12th Dist. No. CA2009-01-039,  2009-Ohio-6046, 2009 WL 3808374,¶ 53, the appellate court noted that "Ohio courts have held that peace officers have a continuing obligation to observe and enforce the laws of this state, even when they are off-duty and employed as private security detail.  See, e.g., *State v. Glover,* 52 Ohio App.2d 35, 367 N.E.2d 1202 (10th Dist.1976); *State v. Underwood,* 132 Ohio Misc. 2d 1, 830 N.E.2d 1266,

2005-Ohio-2996; *State v. Hurley*, 4th Dist. No. 1292, 1986 WL 12397 (Oct. 29, 1986).  Appellant cites *State v. Duvall,* 11th Dist. No. 95-P-0140, 1997 WL 360695, for the proposition that the absence of a written contract between AEP and the Hocking County Sheriff's Department  distinguishes this case.

{¶31}  In *Duvall,* the appellant was indicted for one count of felonious assault and one count of assault of a peace officer after allegedly assaulting police officers at a high school football game.  The case indicated the officers contracted with the Brimfield School System to provide security. The officers were paid by the school system. Duvall's sole assignment of error was that the trial court erred in finding the officers were performing "official duties" as mandated by R.C. 2903.13(C)(3).  The trial court previously held a peace officer was in performance of official duties when he is was performing duties of security or other law enforcement within his jurisdiction "regardless of who pays [him]." The appellant in *Duvall* urged the statute regarding assault on a peace officer applied only when the peace officer was "on duty" or "on the clock." The appellate court in *Duvall* held to determine what comprises a peace officer's "official duties" the court must look to the activities the peace officer was engaged in at the time he was assaulted.  If the peace officer was engaged in a duty imposed upon him

by statute, rule, regulation, ordinance or usage, regardless of his duty status, that officer is "in the performance of [his]official duties for purposes of R.C. 2903.13(C)(3)." The appellate court noted the sergeant involved was off-duty, being compensated for his monitoring services by the school system. The court also noted the officer was in uniform, in his territorial jurisdiction, and performing a "peace-keeping" function as required of him by R. C. 737.11.[7]

{¶32} Although the *Duvall* court used the term "contracted," in its description of the relationship between the officer assaulted and the school system, we do not find the case's outcome hinged on this fact. In the case sub judice, Woodgeard and Sheriff North both testified Woodgeard was employed full-time by the Hocking County Sheriff's Department and he was working on Donaldson Road on the incident date at AEP's request to help keep the peace. Woodgeard and others testified Woodgeard was wearing an official uniform and using a sheriff's cruiser. We do not find the parties failure to have a written contract in place to be outcome determinative. We find from the testimony presented at trial any rational trier of fact could have

---

[7] R.C. 737.11 provides, generally, the duties of police and fire departments, are to preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States, and all court orders issued , consent agreements, and protection orders issued pursuant to the Revised Code and courts of other states.

found the State presented sufficient evidence Woodgeard met the definition of peace officer.

{¶33} We must next consider whether there was sufficient evidence to find beyond a reasonable doubt whether or not Woodgeard was in the performance of official duties. At trial, the court instructed the jurors as to the definition of what comprise a peace officer's official duties. The court also instructed deputy sheriffs are permitted under state law to work special duties and make arrests for crimes they believe to have occurred in their presence. We must consider the events which transpired on Donaldson Road, and then the ones which evolved on the Ogles' property.

{¶34} The Ogles' version of what happened on Donaldson Road is that they were honking, yelling, even cursing, but breaking no laws. They drove off because they felt Woodgeard was improperly trying to get into their vehicle. They denied hearing any commands or directives from Woodgeard. Woodgeard had no reason to follow them onto private property.

{¶35} Woodgeard's version of the scene at Donaldson Road is because of the Ogles' noisy display, he decided to investigate the situation. He directed Appellant to calm down and she refused. He requested she step out of the vehicle and she did not comply. At that point, Woodgeard placed his hand on the truck door and the Ogles drove off at a high rate of speed.

Jason Stacy corroborated this testimony, adding that Woodgeard repeatedly tried to calm Appellant and Stacy felt it was a threatening situation.

{¶36} On the Ogles' property, Appellant continued to be belligerent and charged at Woodgeard. Woodgeard testified just before Appellant kicked him, making contact, he informed her she was going to be arrested for disorderly conduct. R.C. 2917.11(A) disorderly conduct reads as follows, in pertinent part:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> (1) engage in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
>
> (2) Making unreasonable noise or an offensively coarse utterance, gesture or display or communicating unwarranted and grossly abusive language to any person;
>
> (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;
>
> (5) Creating a condition that is physically offensive to person or that presents a risk of physical harm to person or property, by any act that serves no lawful and reasonable purpose of the offender."

{¶37} The 2nd District Court of Appeals considered whether an officer had a reasonable basis to believe that a defendant had committed the offense of disorderly conduct in *State v. Ellis*, 2nd Dist. No. 24003, 2011-

Ohio-2967, 2011 WL 2436939.  There two defendants were arrested and tried together on charges of obstruction of official business, resisting arrest, and disorderly conduct.  The confrontation between Ellis, another defendant Robinson-Williams, and Dayton police officers stemmed from Ellis's son's stop for a traffic violation and the officers' intent to tow the vehicle.  Ellis and Robinson-Williams arrived at the scene to prevent the car from being towed.  Robinson-Williams began yelling, screaming, and cussing so an officer asked her to calm down.  She began flailing her harms, continuing to yell and scream.  The officer's testimony was corroborated by a second officer.  The appellate court noted at ¶ 47:

> "[A] 'lawful arrest' for disorderly conduct occurs regardless of whether the alleged offender is ultimately convicted if the officer had reasonable grounds to believe that the accused was recklessly causing inconvenience, annoyance or alarm to him by abusive language, and that the individual's language and conduct was likely to provoke a violent response.***[T]he test is object and [the officer] need not in fact be inconvenienced, annoyed, or alarmed, or personally provoked to a violent response." *State v. Sansalone,* 71 Ohio App. 3d 284, 286, 593 N.E.2d 39, 1st Dist.1991); R.C. 2917.11 (disorderly conduct statute.)   The question instead, focuses on whether, under the circumstances, it is probable that a reasonable police officer would find the accused's language and conduct annoying or alarming and would be provoked to want to respond violently." *Sansalone*, at 286(Citation omitted.).

In deciding *Ellis,* the court held at ¶ 49:

> "[t]he jury reasonably could have believed the officers' testimony and found they had a reasonable basis to believe that

Robinson-Williams was committing the offense of disorderly conduct. The jury could have found that a reasonable officer woud find that the noise she was making and her offensive and coarse language were annoying, at the very least. Moreover, given Robins-Willians' vocal opposition to the car being towed, the jury could have found that a reasonable officer would have been alarmed about what action she might take to stop it."

{¶38} The "reasonable basis" language was also utilized in *State v. Glenn,* 2004-Ohio-1489, 2004 WL 595644, at ¶ 26, wherein the First District Court of Appeals considered whether the evidence was sufficient to support defendant's conviction for assault on a peace officer, and ultimately concluded that it did. In *Glenn,* an altercation occurred between Glenn and a Hamilton County deputy sheriff at the Hamilton County Courthouse. Glenn was present in order to testify as a witness in his brother's trial. Glen and a woman, another witness in the trial, clashed. A police officer intervened and sent Glenn and the woman separate ways. Shortly thereafter, the sheriff's deputy responded to another disturbance. The woman told the deputy that Glenn had verbally and physically assaulted her. The deputy approached Glenn to speak to him about the problem and Glenn became agitated and loudly complained about the woman. The deputy determined to let Glenn vent. Then the deputy told Glenn to avoid contact with the woman. Glenn told the deputy, "My taxpayer money paid for this courthouse. I can do and say whatever I want." The deputy testified Glenn was loud and angry. The

deputy then decided to ask Glenn's name.  Glenn complied but the deputy next asked for a social security number or an identification card.  Glen refused and would not cooperate.   The deputy then asked Glenn why he was at the courthouse.  From that point on, Glenn became further verbally abusive and ultimately threw his coat and hat on the floor, stepped close to the deputy and said "[Y]ou need to go ahead and arrest me, punk."  The deputy began to arrest and handcuff Glenn. A scuffle ensued wherein Glenn kicked the deputy twice in the groin and bit his hand.

{¶39}  We conclude a jury could reasonably find Woodgeard was in the performance of official duties when he approached the Ogles' truck and tried to calm the situation.  At least one witness testified to feeling, essentially, the Ogles' had created a threatening situation.  After having been allowed to vent, Appellant refused to calm down.  She refused to step out of the truck so Woodgeard could address the matter.  After refusing to obey Woodgeard's command, the truck took off at a high rate of speed. These actions were observed by Woodgeard and others on Donaldson Road. Although Appellee and Appellant presented contrasting versions of the facts, it was the jury's determination as to which of the witnesses were more credible. Furthermore, the jury heard the CD evidence that Mr. Ogle admit Woodgeard directed Appellant to step out of the truck, although both Mr.

and Mrs. Ogle denied hearing any orders and claimed Woodgeard was trying to get into their truck for no reason.

{¶40} We are mindful the weight of evidence and credibility of witnesses are issues to be decided by the trier of fact. *State v. Dye,* 82 Ohio St. 3d 323, 329, 695 N.E.2d 763 (1998); *State v. Frazier,* 73 Ohio St. 3d 323,339, 652 N.E.2d 1000 (1995); *State v. Williams,* 73 Ohio St. 3d 153, 165, 652 N.E.2d 721 (1995); *State v. Vance,* 4th Dist. No. 03CA27, 2004-Ohio-5370, 2004 WL 2260498, ¶ 9. As such, the trier of fact is free to believe all, part or none of the testimony of each witness who appears before it. See *State v. Long,* 127 Ohio app.3d 328, 335, 713 N.E.2d 1 (4th Dist. 1998); *State v. Nichols,* 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (4th Dist. 1993); *State v. Harriston,* 63 Ohio app.3d 58, 63 577 N.E.2d 1144 (8th Dist. 1989); *Vance,* ¶ 9. We also acknowledge that the trier of fact is in a much better position than an appellate court to view witnesses and observe their demeanor, gestures, and voice inflections, and to use those observations to weigh the credibility of the testimony. See *Myers v. Garson,* 66 Ohio St. 3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal. Co. v. Cleveland,* 10 Ohio St. 3d 77, 80, 461 N.E.2d 1273 (1984); *Vance,* ¶ 9. Here, the trial court properly instructed the jurors as to direct and circumstantial evidence, credibility of the witnesses, and reasonable doubt.

{¶41}  We conclude a jury reasonably could have found Woodgeard had observed criminal activity on Donaldson road and therefore, was in the performance of his official duties when he followed the Ogles onto their property to continue attempting to calm the situation.  As in the cited cases, given Appellant's refusal to calm down and obey the officer's direct command, it was reasonable for Woodgeard to believe Appellant might be rushing away to commence further threatening or violent action. As such, we believe sufficient evidence was presented at trial from which a reasonable jury could determine that Woodgeard was acting as a peace officer in performance of official duties at the time of his assault.

Was there sufficient evidence that Appellant acted "knowingly" when she allegedly assaulted Woodgeard?

{¶42}  We next address Appellant's argument that there was not sufficient evidence to convict her of "knowingly" committing an assault upon a peace officer.  Appellant submits the State's case rested entire upon a claim by Woodgeard, a "rookie" officer on probationary status.  Appellant points out that of the three people present during the altercation, only Woodgeard's version of the events differed. The Ogles put forth testimony at trial that, for no reason, Woodgeard followed them onto their property and pepper-sprayed first Appellant, as she was trying to go in her house and then her husband, as he tried to aid her.  Mr. Ogle recalled that Appellant did

"brush" Woodgeard's face with the papers. The Ogles' denied Appellant kicked at Woodgeard until after he pepper-sprayed them.  However, the CD evidence indicated the kick happened before the pepper-spraying and ensuing physical struggle. According to Woodgeard, he deployed the pepper spray only after she refused to calm down and kicked him in the genital area.

{¶43}  It is apparent the jury believed Woodgeard's version of the events.  We find the record contained sufficient evidence beyond a reasonable doubt the jury could have found Appellant acted "knowingly."

{¶44}  The trial court instructed the jury as to the definition of "knowingly."   "Knowingly" is defined in R.C. 2901.22 (B) as: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist." The trial court also instructed that knowledge is determined from all the facts and circumstances in evidence.

{¶45}  At trial, Appellant testified that after Woodgeard's unwarranted deploying of the pepper spray a first time, she stumbled around her yard, trying to get to the house.  She testified she made a "conscious decision" to drop her purse, so that she could move away from him faster. She further testified she stumbled, and while she was looking down, saw

Woodgeard's tan pants, knew it was him coming at her, and kicked out in order to protect herself. Appellant characterized the kick as a "reflex" action. Furthermore, Appellant testified she believed Woodgeard was going to tase her or "kill her."

{¶46} Again, the credibility of the witnesses is a determination for the jury. The jury may have found it self-serving to believe that Appellant made a conscious decision to drop her purse, but somehow the decision to kick at a uniformed police officer was not a conscious one. The jury may have found it incredible that Appellant could seriously believe she was risking imminent death. The jury apparently did not find Appellant's testimony persuasive. We find that a rational trier of fact could have found Appellant acted "knowingly" beyond a reasonable doubt. As such, we overrule assignment of error number one and affirm the judgment of the trial court.

{¶47} Additionally, because we review a denial of a motion for acquittal under Criminal Rule 29 under a "sufficiency of the evidence standard, we find the trial court did not err in overruling the motion made in this case. Appellant acknowledges she relies on the same arguments set forth in her first assignment of error in claiming the trial court erred in denying her motion made at the conclusion of the State's case. Having

considered the evidence under the "sufficiency" standard and finding no merit to Appellant's first assignment of error, we further find the trial court did not err with regard to its denial of her Crim. Rule 29 motion. As such, the second assignment of error is overruled and the judgment of the trial court is hereby affirmed.

{¶48} Finally, Appellant relies on the same contentions regarding Woodgeard's status as a peace officer, the alleged absence of criminal activity, and the characterization of her acts as self-defense in arguing her third assignment of error that the conviction is against the manifest weight of the evidence. Despite her assertions, we find Appellant's assignment of error as to "manifest weight" also fails. In making this finding, we have had to consider the same evidence previously discussed in resolution of Appellant's first and second assignments of error. Admittedly, the trial testimony boiled down to a "he said/she said" consideration. Appellant's testimony indicated she kicked at Woodgeard in self-defense after he followed her onto her property for no reason, chased her around the yard, and pepper-sprayed her for no reason. Woodgeard's testimony indicated Appellant was pepper-sprayed only after she refused to calm down, obey his orders, and kicked his genital area. It is obvious the jury did not find Appellant's version of the facts credible and instead relied on the evidence

presented by the State's witnesses.  For the jury to have done so is well within its province as trier of fact.  And in doing so, we cannot find a manifest miscarriage of justice has occurred or the jury clearly lost its way.  As such, we overrule Appellant's third assignment of error under this appellate case number and affirm the judgment of the trial court.

Appellate case number 11CA32

Supplemental Facts

{¶49}  Ogle appeals a November 22, 2011 order which stated her recognizance bond with electronic monitoring was to be revoked as of November 28, 2011.  As a backdrop to the trial court's decision, Appellant had been released on a $5,000.00 recognizance bond prior to her August 2011assault trial.  At the conclusion of trial, the court continued her bond with an added condition that Appellant have no contact with jurors or witnesses in her trial as she awaited sentencing.  Prior to sentencing, the State filed a motion to revoke her recognizance bond based upon the allegation Appellant made contact with a juror. The trial court conducted a hearing on the motion, continued the bond, but added a condition that Appellant be placed on electronically monitored house arrest.

{¶50}  On September 27, 2011 at Appellant's sentencing, the court denied appellant's motion to reinstate the original recognizance bond.  She

was sentenced to a six-month jail term, with execution stayed until October 27, 2011.  On September 30, 2011, Appellant filed notice of appeal of her conviction. This was assigned appellate case number 11CA29.  On October 5, 2011, the trial court granted Appellant's request to stay execution of her sentence pending appeal.  The conditions of her bond, including electronically monitored house arrest, were continued.

{¶51}  Appellant subsequently file written notice to the trial court announcing as of November 27, 2011, she would no longer pay for the electronically monitored house arrest.  A hearing on her notice was held on November 22, 2011.  The trial court ordered as of November 28, 2011, the recognizance bond with electronic monitoring would be revoked.  It was ordered that Appellant be taken into custody and held pending appeal. Appellant immediately filed notice of appeal of the trial court's order revoking her recognizance bond. This was assigned appellate case number 11CA32, the instant appeal. On November 25, 2011, Appellant filed a motion to stay execution of judgment and sentencing ex parte temporary stay and expedited request for review.  On November 28, 2011, this court denied Appellant's motion for stay and expedited review.

{¶52}  On November 29, 2011, this Court further denied Appellant's request to reinstate the original recognizance bond.  On December 16, 2011,

this Court also issued an entry denying Appellant's motion for stay in her first appeal.

**{¶53}** In her reply brief, Appellant indicates she was released from incarceration on May 25, 2012. She has served her six-month jail sentence imposed pursuant to her assault conviction.

ASSIGNMENTS OF ERROR

I. THE TRIAL COURT ERRED AS A MATTER OF LAW TO COMMENCE SENTENCING FOR WHICH IT HAD NO JURISDICTION.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW TO COMMENCE SENTENCING IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS AND CRIMINAL RULE 44.

III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN REVOKING APPELLANT'S BOND IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS AND CRIMINAL RULE 44.

IV. THE TRIAL COURT ERRED IN REVOKING APPELLANT'S BOND IN ADVANCE OF ANY VIOLATION OF BOND, SHOWING OF GOOD CAUSE OR CONFRONTATION.

V. THE TRIAL COURT ERRED IN ORDERING A BENCH WARRANT IN ITS NOVEMBER 28, 2011 JOURNAL ENTRY PURSUANT TO THE NOVEMBER 22, 2011 ORDER AND NOTICE.

**{¶54}** The substance of Appellant's arguments appears to relate to the restraint of her freedom pursuant to the trial court's bond orders. She argues

(1) the trial court was without jurisdiction to make bond orders pending her first appeal; (2) the trial court failed to conduct a hearing as to her inability to obtain counsel; (3) the trial court had no evidence a violation of her bond occurred; and (4) the trial court had no reason to believe Appellant would fail to appear at hearing.

A. STANDARD OF REVIEW

{¶55} The release of an accused on bail after conviction and pending appeal is not a matter of right but a question to be resolved by an exercise of the sound discretion of the court. Only if there is a patent abuse of such discretion should the decision of the court denying bail be disturbed. *Christopher v. McFaul,* 18 Ohio St. 3d 233, 480 N.E.2d 484 (1985), at *234, quoting *Coleman v. McGettrick,* 2 Ohio St. 2d 177, 180, 207 N.E.2d 552 (1965). See, also, *State v. Miller,* 77 Ohio App. 3d 305, 602 N.E.2d 296 (Sept. 1991); *State v. Tillimon*, 6th Dist. No. L-93-334, 1994 WL 385180 (July 22, 1994). "An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than an error in judgment." *State v. Leeth,* 4th Dist. No. 05CA745, 2006-Ohio-3575, 2006 WL 1901010, at ¶ 6, citing *State ex rel. Richard v. Seidner,* 76 Ohio St. 3d 149, 151, 666 N.E.2d 1134 (1996). Ordinarily, we would proceed to

consideration of the issues raised by Appellant. However, because we find Appellant's arguments to be moot, we decline to reach the merits.

## B. LEGAL ANALYSIS

{¶56}  Appellant's assignments of error under this case number essentially relate to the bond orders which (1) restrained her freedom on September 16, 2011, when she was placed on electronically monitored house arrest, and (2) further placed restraint when she was taken into custody on November 28, 2011.  Appellant was ordered held until she served her sentence.  We also note Appellant has served her six-month term of incarceration.

{¶57}  An appeal challenging a felony conviction is justiciable, i.e., not moot, even if the defendant has served sentence because the defendant "has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed upon him or her." *State v. Popov,* 4th Dist. No. 10CA26, 2011-Ohio-372, 2011 WL 322475, at ¶ 5, citing *State v. Adams,* 8th Dist. No. 85267, 2005-Ohio-3837, at ¶ 5; see also, *State v. Howard,* 4th Dist. No. 89CA1840, 1991 WL 28326 (Feb. 26, 1991), at *3.  This is because when the defendant has served his punishment, "there is no collateral disability or loss of civil rights that can be remedied by a modification of the rights of the

sentence in the absence of a reversal of the underlying conviction. * * *[A]nd no relief can be granted* * * subsequent to the completion of the sentence if the conviction itself is not at issue." *State v. Bostic,* 8th Dist. No. 84842, 2005-Ohio-2184, at ¶ 22, quoting *State v. Beamon,* 11th Dist. No. 2000-L-160, 2001-Ohio-8712, 2001 WL 1602656, at *1.

{¶58} In this matter, we have affirmed Appellant's conviction in her first appeal, appellate case number 11CA29. Since the underlying conviction is not at issue by our disposition of the appeal set forth under case number 11CA29, no relief can be granted Appellant. The bond orders restrained her freedom beginning September 16, 2011. She has served the incarceration portion of her sentence and remains on community control. We find any issues with regard to the trial court's bail decisions which restrained her freedom after September 16, 2011 are now moot. As such, we overrule Appellant's five assignments of error under this appellate case number and affirm the judgment of the trial court.

Appellate case number 12CA2

ASSIGNMENT OF ERROR

I. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR NEW TRIAL.

Supplemental facts

{¶59} During Appellant's September 27, 2011 sentencing hearing, the trial court referenced a 2010 letter from Dr. Margaret Sawyer. Appellant contends (1) neither she nor her attorneys were provided discovery of the letter prior to trial, and the letter contained information material to the preparation of a defense; (2) the prosecutor engaged in misconduct during trial by eliciting testimony from Woodgeard about his surgery and "presenting it as fact" to the jury; and, (3) the prosecutor misstated the Ogles' testimony in his closing argument. Appellant argues these alleged errors prejudiced her and affected the outcome of the trial.

{¶60} With this appeal, Ogle contests the January 9, 2012 entry which overruled her November 28, 2011 motion for new trial. The entry from which she appeals stated she had previously filed a motion for new trial, and the November 2011 motion raised no new issues. [8] Upon review, we note the November 2011 motion for new trial did raise a new issue with respect to Dr. Sawyer's letter.

A. STANDARD OF REVIEW

{¶61} "Generally, a decision on a motion for a new trial is within the discretion of the trial court." *State v. Lusher,* 4th Dist. No. 11CA1, 2012-

---

[8] Appellant filed a motion for acquittal and new trial on August 25, 2011. It was denied by entry of September 21, 2011.

Ohio-5526, 2012 WL 5984932, ¶ 25, citing *State v. Ward*, 4th Dist. No. 05CA13, 2007-Ohio-2531, 2007 WL 1518611, ¶ 41, citing *State v. Schiebel,* 55 Ohio St. 3d 71, 564 N.E. 2d 54 (1990), paragraph one of the syllabus. Accordingly, we will not reverse a trial court's decision on a motion for a new trial absent an abuse of discretion. *State v. Nichols,* 4th Dist. No. 11CA912, 2012-Ohio-1608, 2012 WL 1204015, ¶ 61.

{¶62} However, when evidence available to the prosecution is withheld from the defense, the issue on review is different than if the evidence had been discovered from a neutral source. When material, exculpatory evidence is withheld by the prosecution in a criminal proceeding, a defendant's due process right to a fair trial under the Fourteenth Amendment is violated. The usual standard of review for a new trial is not applicable regardless of the good or bad faith of the prosecution. *State v. Phillips,* 4th Dist. Nos. 89-CA-32, 89-CA-33, 1992 WL 42790, (Mar. 5, 1992); *State v. Johnston,* 39 Ohio St. 3d 48, 60, 592 N.E.2d 898 (1988), quoting *Brady v. Maryland,* 373 U.S. 87, 83 S. Ct. 1194 (1963).

{¶63} The standard used to determine whether defendant should receive a new trial due to a prosecutor's failure to disclose evidence is that the defendant must have been deprived of his right to a fair trial due to the prosecutor's omission. *Phillips*, supra at *3. Absent a constitutional

violation, the prosecution's constitutional duty to disclose is not breached. Id, citing *United States v. Bagley,* 473 U.S. 667, 675-676, 105 S. Ct. 3375 (1985); *United States v. Agurs,* 427 U.S. 97, 96 S. Ct. 2392  (1976).

> "The Ohio Supreme Court has held that:

> 'The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. (Internal citation omitted).  In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Phillips,* supra, citing *Bagley*, 473 U.S. 667 (1984).  The issue in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material. *Phillips,* supra at *3.

### B. LEGAL ANALYSIS

Dr. Sawyer's Letter

**{¶64}** Appellant argues she is entitled to a new trial pursuant to Crim.R. 33(A)(6)  because the State failed to disclose the letter. Crim R. 33(A)(6)  provides for the granting of a new trial when new evidence material to the defense is discovered, and which the defendant could not with reasonable diligence have discovered and produced at trial. For the reasons which follow, we are not persuaded.

**{¶65}** Dr. Sawyer's letter advised Woodgeard underwent a perianal abscess drainage procedure in the weeks subsequent to the altercation with

Appellant. The letter informed "this type of abscess can occur because of an infected hair follicle, a cut, abrasion, sweat gland, or by direct trauma." Appellant argues the letter was material to her defense in that it provided "conclusive medical fact" Woodgeard's procedure was not for an injury to his genitals. Woodgeard testified to being kicked one time in his genital area. The State emphasizes the letter was not used at trial and therefore, Ogle was not prejudiced.

Crim.R. 16(B)(1)(f) provides:

Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilty or punishment.***

{¶66} In this matter, we do not believe the letter from Dr. Sawyer is so helpful that its disclosure to Appellant prior to trial would have aided in Appellant's defense and affected the outcome of her trial. The mere possibility that an undisclosed statement might have helped his defense is not sufficient to establish "materiality" in the Constitutional sense. Id., citing *Agurs*, supra, at 109-110.

{¶67} Appellant does not explain how the letter would have helped her defend her case, other than repeated references to Woodgeard's testimony that he was kicked in the "genitals" and to a lack of testimony that

he was kicked in the "perianal" area. Appellant is not a medical expert and neither are we. Without more to substantiate her allegation that the letter provides "conclusive medical fact," we cannot find a reasonable probability that Appellant would have been acquitted if this letter had been available to her prior to trial. The information contained in the letter is peripheral to the issues before the jury, whether or not Woodgeard was assaulted and, if so, did Appellant act in self-defense. We find no reasonable probability the result of Appellant's trial would have been different had she possessed the letter, especially in light of Mr. Ogle's admission on the CD that he heard Woodgeard's directive to his wife to step outside their vehicle and Appellant's admission at trial she saw Woodgeard's tan pants and kicked in his direction.

Prosecutorial Misconduct

{¶68} Appellant also argues she is entitled to a new trial pursuant to Crim.R. 33(A)(2) which provides a new trial may be granted on motion of the defendant for misconduct of the jury, prosecuting attorney, or the witnesses for the state. "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Jackson,* 4th Dist. No. 11CA20, 2012-Ohio-6276, 2012 WL 6761891, ¶ 35, quoting *State v. Leonard,* 4th Dist. No.

08CA24, 2009-Ohio-6191, 2009 WL 4050254, ¶ 36, citing *State v. Smith*, 97 Ohio St. 3d 367, 780 N.E.2d 221 (2002), ¶ 45, in turn citing *State v. Smith,* 14 Ohio St. 3d 13, 14, 470 N.E.2d 883 (1984).  "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.'"  *State v. Givens,* 4th Dist. No. 07CA19, 2008-Ohio-1202, 2008 WL 699044,¶ 28, quoting *State v. Gest,* 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995).  *Accord State v. Apanovitch*, 33 Ohio St. 3d 19, 24, 514, N.E.2d 394 (1987). "Prosecutorial misconduct constitutes reversible error only in rare instances."  *State v. Edgington,* 4th Dist. No. 05CA2866, 2006-Ohio-3712, 2006 WL 2023554, ¶ 18, citing *State v. Keenan,* 66 Ohio St. 3d 402, 406, 613 N.E.2d 203 (1993).  The "touchstone of analysis* * * is the fairness of the trial, not the culpability of the prosecutor.* * *The Constitution does not guarantee an 'error free, perfect trial.'"  *Leonard* at ¶ 36, quoting *Gest* at 257, 670 N.E.2d 536.

{¶69}  Appellant complains the prosecutor submitted Woodgeard's testimony of surgery to his genitals to the jury as fact.  The prosecutor questioned Woodgeard as follows:

> Q:          Did you need medical attention at a later time?
> A:          Yes, I did.
> Q:          What type of attention did you need?
> Counsel:    Objection, Your Honor.

The Court:   Overruled.
Q:              You can answer that.
A:              About two weeks later I was having issues down there. I was admitted in the hospital for two nights and had surgery and was off work for about a month.
Q:              When you say down there, you mean your genital region?
A.              Yes sir.

{¶70}  On cross-examination, Appellant's counsel further explored

the topic of surgery. Counsel elicited the following testimony from

Woodgeard:

Q:              …Let's talk a little bit about the surgery.  What exactly did they have to do?
A:              They actually determined it was some sort of abscess which can be caused by trauma.
Q:              Okay.  And when did you first schedule the appointment with the doctor, was it prior to the incident?
A:              There was no scheduling.  It was straight to the ER.
Q:              Okay.  So you go to the ER and they admit you.
A:              Yes.
Q:              And it was just an abscess?
A:              Yes.
Q:              Okay.  And it's just an abscess, is that what you're saying?
A:              Yes.
Q:              Now are you indicating to this jury that the injury that you supposedly received from Melanie was the cause of it?
A:              I can't sit here and say.  I'm not a licensed physician, but I can tell you want my doctor said that it could b--
Q:              Well, that's--we can't--
A:              --caused from trauma.

{¶71}  We do not find Appellant was materially prejudiced or denied

a fair trial by the testimony elicited by the prosecutor regarding

Woodgeard's surgery.  Again, the issue at trial was whether Appellant' s

kick was an assault or an act of self-defense.  Any treatment Woodgeard had

for his alleged injury was an extraneous issue, not material to Appellant's

guilt.

{¶72}  Appellant also complains the prosecutor's statement to the jury

in closing that "[t]he position that the Ogle's were taking that Trent came out

of the SUV and maced her up by the cruiser" was a fabrication of their

testimony.  However, Appellant did not object at trial.  Failure to object to

an alleged error waives all but plain error.  *State v. Keeley,* 4th Dist. No.

11CA5, 2012-Ohio-3564, 2012 WL 3194355, ¶ 28.  Notice of Crim.R.

52(B) plain error must be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice.  *State v.*

*Rohrbaugh,* 126 Ohio St. 3d 421, 934 N.E.2d 920 (2010), at ¶ 6; *State v.*

*Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the

syllabus.  To find plain error, the outcome of the trial clearly would have

been otherwise.  *State v. McCausland,* 124 Ohio St.3d 8, 918 N.E.2d 507

(2009), at ¶ 15; *State v. Braden,* 98 Ohio St.3d 354, 785 N.E.2d 439 (2003),

at ¶ 50.  "Prosecutorial misconduct rises to plain error only if it is clear that a

defendant would not have been convicted in the absence of the improper

comments." *State v. Purdin*, 4th Dist. No. 12CA944, 2013-Ohio-22, 2013,

WL 84897, ¶39; *Keeley,* supra, citing *State v. Conley,* 4th Dist. No.

08CA784, 2009-Ohio-1848, ¶ 27; *State v. Olvera-Guillen,* 12th Dist. No.

CA2007-05-118, 2008 Ohio-5416, ¶ 36. Here, we review the alleged error

under a "plain error" analysis.

{¶73} "Generally, prosecutors are entitled to considerable latitude in

opening and closing arguments." *Jackson,* supra at ¶ 42, quoting *State v.

Whitfield*, 2nd Dist. No. 22432, 2009-Ohio-293, 2009 WL 161336, ¶ 12.

Appellant argues at no time did she or her husband testify or suggest that the

"macing" took place by the cruiser. She argues it was Woodgeard's

testimony only that he pepper-sprayed them between his SUV and their

truck.

{¶74} In this case, trial court properly instructed that opening and

closing statements of counsel are not evidence. "A presumption exists that

the jury has followed the instructions given to it by the trial court." *State v.

Jones,* 2012-Ohio-5677, 2012 WL 6553401, ¶ 194, citing *State v. Murphy,*

65 Ohio St. 3d 554, 605 N.E.2d 884 (1992). Moreover, in this matter, both

parties acknowledged Woodgeard deployed pepper-spray at Appellant and

her husband. The jury heard the testimony of both sides as to where the

events before and after the pepper-spraying transpired. Even if the

prosecuting attorney did mischaracterize, intentionally or not, the exact

location of where the pepper-spraying occurred, again, it is hardly a material

fact to these proceedings and as such, does not rise to the level of plain error.

In other words, we do not find that Appellant was convicted solely on the

prosecutor's characterization or mischaracterization as to where the macing

took place.

{¶75} We find the trial court did not abuse its discretion in overruling

the Appellant's motion for a new trial on the bases of the prosecution's

failure to disclose Dr. Sawyer's letter or the alleged instances of

prosecutorial misconduct.  We therefore overrule this assignment of error.

Appellate case numbers 12CA11 and 12CA12

ASSIGNMENT OF ERROR -12CA11

I.  THE TRIAL COURT ERRED BY FINDING APPELLANT
GUILTY OF A COMMUNITY CONTROL VIOLATION FOR
AN INCIDENT THAT OCCURRED PRIOR TO APPELLANT
BEING SUBJECT TO THE COMMUNITY CONTROL
SUPERVISION.

ASSIGNMENTS OF ERROR- 12CA12

I.  THE TRIAL COURT ERRED IN ACCEPTING OGLE'S
ALFORD PLEA WHEN THERE WAS NO EVIDENCE THAT
 THE ALLEGED VICTIM DID NOT CONSENT TO
DEFENDANT'S ACTIONS.

II. THE TRIAL COURT ABUSED ITS DISCRETION BY
FAILING TO CONDUCT AN EVIDENTIARY HEARING
ON OGLE'S CRIM.R. 32.1 MOTION TO WITHDRAW
GUILTY PLEA.

Supplemental facts

**{¶76}** After Appellant was sentenced for her assault conviction on September 27, 2011, her sentence was initially stayed for a period of time and she was required to wear an ankle monitor as a condition of bond. On September 16, 2011, Appellant contracted with Greco's Electronic Monitoring Service (hereinafter, "Greco") for ankle monitoring equipment and service. She was required to sign an instruction and rules sheet. On or about November 25, 2011, Appellant allegedly damaged the ankle monitor by submerging it in her bathtub. As a result of this incident, the Hocking County Grand Jury returned an indictment for one count of vandalism, a violation of R.C. 2909.05(B)(1)(b), and a felony of the fifth degree. Due to the new charge, the State of Ohio filed a motion to impose prison term on Appellant's assault conviction.

**{¶77}** On May 11, 2012, Appellant's case came on for hearing. The record reflects the parties presented for a change of plea hearing in trial court case number 12CR0038, the vandalism case. Appellant was present and represented by counsel. Upon advice of counsel, she entered an Alford plea to a reduced charge of criminal damaging, a violation of R.C. 2909.06(A)(1), a second degree misdemeanor. Appellant was found guilty of criminal damaging and sentenced to thirty days in jail ( all suspended),

eighteen months of non-reporting probation, restitution to Greco in the amount of $1,300.00, and court costs. The judgment entry of sentence was filed May 14, 2012.  On May 25, 2012, the trial court filed a nunc pro tunc judgment entry of sentence. [9] Appellant filed a pro se motion to set aside judgment entry of sentence and dismiss indictment on July 3, 2012.  The motion was denied on August 22, 2012.

{¶78}  The record also reflects on the same date as the change of plea hearing, May 11, 2012, the States's motion to impose prison term in the assault case came on for hearing and was treated as a motion to revoke community control. At this hearing, the court discussed the evidence surrounding Appellant's alleged violation.  The court also discussed Appellant's previous Alford plea to criminal damaging. The State's attorney orally withdrew the motion to impose a prison term at the hearing, prior to a finding of guilty.  The court then sentenced Appellant to an additional two years of community control, an extension of the initial sentence of three years of community control on her assault conviction, to a total of five years.

{¶79}  In appellate case number 12CA11, Ogle appeals the June 12, 2012 order that extended her term of community control. In appellate case

---

[9] The nunc pro tunc judgment entry clarified that the Adult Parole Authority (APA) would not be supervising Appellant.

number 12CA12, Ogle appeals the nunc pro tunc judgment entry of sentence dated May 25, 2012.

A. STANDARD OF REVIEW

**{¶80}** Appellant's arguments in appellate case number 12CA11 and 12CA12 are interrelated. As such, we set forth the appropriate standards of review in both cases in this subsection.  Under appellate case number,12CA12, Appellant argues the trial court erred in accepting her guilty plea.  The decision to accept or refuse a guilty plea is within the sound discretion of the trial court.  *State v. Byrd,* 4th Dist. No. 2008-Ohio-3909, 2008 WL 2955447, ¶ 4; *State v. Bronaka*, 11th Dist. No. 2007-L-095, 2008-Ohio-1334, at ¶ 6.  As such, an appellate court will not overrule a trial court's judgment absent an abuse of discretion.  *Byrd,* at ¶ 4. The standard of review has been set forth more fully above under appellate case number 11CA32.

**{¶81}** Appellant also argues under appellate case number 12CA12, the trial court abused its discretion in failing to conduct an evidentiary hearing as to Appellant's motion to set aside judgment entry of sentence and dismiss indictment. Under Crim.R. 32.1, a trial court may grant a post-sentence motion to withdraw a guilty plea only to correct a manifest injustice. *State v. Dotson,* 4th Dist. No. 03CA53, 2004-Ohio-2768, 2004 WL

1188988, ¶ 5.  The Supreme Court of Ohio has defined "manifest injustice" as a clear or openly unjust act.  Id., citing *State ex rel. Schneider v. Kreiner,* 83 Ohio St. 3d 203, 208, 699 N.E.2d 83 (1998).  This standard permits a defendant to withdraw his guilty plea only in extraordinary cases.  *Dotson*, supra; *State v. Smith,* 49 Ohio St. 2d 261, 264, 361 N.E.2d 1234 (1977).  The decision to grant or deny a post-sentence motion to withdraw a guilty plea is committed to the sound discretion of the trial court.  *Smith,* 49 Ohio St. 2d 261, 361 N.E.2d 1324, paragraph two of the syllabus. An appellate court, therefore, will not reverse the trial court's decision absent an abuse of discretion.  *State v. Xie,* 62 Ohio St. 3d 521, 526, 584 N.E.2d 715 (1992).

{¶82}  Under  appellate case number 12CA11, Appellant argues the trial court erred in extending the term of her community control in her assault conviction.  This argument is interrelated to her conviction for criminal damaging.  "'The right to continue on community control depends on compliance with community control conditions and is a matter resting within the sound discretion of the court.' (Citation omitted).  *State v. Jackson*, 2nd Dist. Nos. 23457 and 23458, 2010-Ohio-2836, 2010-WL 2499945, ¶ 56. Accordingly, we review the trial court's decision to revoke a defendant's community control for an abuse of discretion." (Citation

omitted). Id; *State v. Eversole,* 2nd Dist. No. 23444, 2010-Ohio-1614, 2001 WL 1410727, ¶ 33-34.

**{¶83}** However, to the extent that we must interpret and apply statutes, our review is de novo. *State v. Knowlton,* 4th Dist. No. 10CA31, 971 N.E.2d 295, 2012-Ohio-2350, ¶ 28. See *Roberts v. Bolin,* 4th Dist. No. 09CA44, 2010-Ohio-3783, 2010 WL 31949411, at ¶ 20, quoting *State v. Sufronko,* 105 Ohio App. 3d 504, 506, 664 N.E.2d 596 (4th Dist. 1995), (" 'When interpreting statutes and their application, an appellate court conducts a de novo review, without deference to the trial court's determination.' ").

B. LEGAL ANALYSIS

**{¶84}** Although chronologically, appellate case number 12CA11 is first, we discuss the assignments of error set forth in 12CA12 first for ease of understanding. The first assignment of error in 12CA12 is Appellant's assertion the trial court erred in accepting her *Alford* plea because she asserts there was no factual basis for the plea. Appellant contends Greco consented to her action of submerging the ankle monitor in her bathtub. We begin by reviewing the purposes of the *Alford* plea.

**{¶85}** *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160 (1970), provides a method by which a defendant is able to maintain his factual innocence yet enter a plea of guilty. *State v. Byrd,* 4th Dist. No. 07CA29,

2008-Ohio-3909, 2008 WL 2955447. "A defendant who believes himself to be innocent of the charges against him may rationally conclude that the evidence against him is so incriminating that there is a significant likelihood that a jury would find him guilty of the offense. (Citation omitted.) Consequently, the defendant may rationally conclude that accepting a plea bargain is in his best interests, since he will avoid the risk of greater punishment if found guilty by a jury. (Citation omitted.) When a defendant so chooses to enter this plea, it is known as an *Alford* plea of guilty." *Byrd*, supra at ¶ 16, quoting *State v. Banjoko,* 2nd Dist. No. 21978, 2008-Ohio-492, 2008 WL 308456, at ¶ 12.

{¶86}  An *Alford* plea is "merely a species of a guilty plea, having the effect of waiving [a defendant's] right to appeal." *State v. Darks*, 10th Dist. Nos. 05AP-982, 05AP-983, 05AP-984, 2006-Ohio-3144, 2006 WL1703731, 14, citing *State v. Carter,* 124 Ohio App.3d 423, 706 N.E.2d 409, (2nd Dist.1997), at 429.  The standard for determining the validity of an Alford plea is the same as a regular plea: whether the plea represents a voluntary and intelligent choice among the alternative courses of action available to a defendant. Id; *State v. Post,* 32 Ohio St. 3d 380, 513 N.E.2d 754 (1987).

{¶87}  The Supreme Court of Ohio has held that, in the context of an *Alford* plea, the plea is voluntarily and intelligently made "[w]here the

record affirmatively discloses that : (1) defendant's guilty plea was not the result of coercion, deception, or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both* * *." *Byrd,* ¶ 17, quoting *State v. Piacella,* v. 27 Ohio St. 2d 92, 271 N.E.2d 852 (1971), at the syllabus.

{¶88} Conspicuously absent from Appellant's recitation of the facts in her brief is the additional fact that Appellant's decision to enter an *Alford* plea was pursuant to plea negotiations. Plea agreements are contracts between the state and criminal defendants and are subject to contract-law principles. *State v. Adkins,* 161 Ohio App.3d 114, 2005-Ohio-2577, 829 N.E. 2d 729, ¶ 7; *State v. Butts,* 112 Ohio App. 3d 683, 685-686, 679 N.E.2d 1170, (8th Dist. 1996). (Additional citations omitted.). By entering a plea agreement, Appellant effectively waived her right to appeal, except as to issues with knowledge and voluntariness of the plea. Notably, the record herein reveals Appellant's background, experience, age, and education and, along with the transcript, supports an interpretation that Appellant's plea was intelligent and voluntary. As to the specific *Alford* requirements set forth,

infra, we also note these issues were discussed with Appellant and her

counsel at the May 11th hearing on her change of plea.  The plea

arrangement was described as follows:

> Mr. Archer:        Your Honor, we had agreed that we would amend
> the vandalism charge to criminal damaging, a vilation of Section
> 2909.06(A)(1), a misdemeanor of the second degree.  It is my
> understanding that the defendant was going to then enter an Alford
> plea of guilty.  We are requesting restitution in the amount of
> $1,300.00 to Greco Electronic Monitoring Company, and we have
> no objection to probation in the matter.
>
> The Court:        All right, and Mr. Edwards, is that your
> understanding of the arrangement, sir?
>
> Mr. Edwards:        Yes, it is, Your Honor, yes.
>
> The Court:        All right. And Ms. Ogle, is that your understanding
> of the arrangement also"
>
> Defendant:        Yes, Your Honor.

{¶89}  The trial court further advised before he could accept

Appellant's plea, he must inquire as to whether the plea was freely,

voluntarily, knowingly, and intelligently made.  The following exchange

took place:

> The Court:        First, do you fully understand your constitutional
> rights?
>
> Defendant:        Yes, sir.
>
> The Court:        And were they explained to you by your attorney?
>
> Defendant:        Yes, sir.

* * *

The Court:          And were you threatened in any way to have you change your plea today?

Defendant:          No sir.

The Court:          Were you promised anything besides the plea arrangement that we put on the record here a moment ago in order for you to change your plea?

Defendant:          No sir.

The Court:          And have you had enough time with you attorney, Mr. Edwards, in order to review any defenses that you may have?

Defendant:          Yes, sir.

The Court:          And is there anything unusual about your present mental or physical condition?

Defendant:          No, sir.

The Court:          And are you presently under the influence of alcohol or drugs?

Defendant:          No, sir.

The Court:          Do you have any difficulty in reading or writing the English language?

Defendant:          No, sir.

The Court:          And what is your present age?

Defendant:          Forty-nine.

The Court:          And how far did you go in school?

Defendant:          I did a year and a half of college.

The trial court went on to discuss the allegations against Appellant.

> The Court:          Do you understand the allegations contained originally in the indictment, but now on the - - on the amended charge?  Do you understand the elements that the state would have to prove?
>
> Defendant:          Yes, sir.
>
> The Court:          And do you have any questions about any of the elements of the offense?
>
> Defendant:          No, sir.
>       \* \* \*
> The Court:          All right. Well, actually you are pleading guilty, but it is going to be an *Alford* plea.
>
> Defendant:          Correct.

**{¶90}**  The trial court then reviewed Appellant's constitutional right to speedy trial, trial by jury, the right to confront and cross examine witnesses, and the right to subpoena witnesses.  The court asked specifically:

> The Court:          You have the right to force the state or prove each and every element of its case against you beyond a reasonable doubt, but by entering your plea of guilty, this will not occur.  Do you understand that?
>
> Defendant:          By entering an *Alford* plea, yes.

**{¶91}**  The trial court further inquired as to Appellant's satisfaction with her legal representation and the penalties for a second degree misdemeanor.   Specifically, the court engaged in the following colloquy with Appellant:

The Court:          All right. Okay.  Now as to the *Alford* plea, do you understand that although you are maintaining your innocence, if you plead guilty, I still can find you guilty of this offense?

Defendant:          Yes, sir.

The Court:          And have you consulted with your attorney, Mr. Edwards, about this decision?

Defendant:          Yes, sir.

The Court:          And what reasons to you have for entering a plea of guilty even though you are claiming meaning you are innocent?

Defendant:          The *Alford* plea?  What?

The Court:          Yes. The thing is the normal reasons are that - - you know, you've been offered a plea arrangement that you believe is advantageous to take and at this point, you know, you want to take advantage of that.

Defendant:          Primarily because there is this probation issue in the other case- -

The Court:          Okay.

Defendant:          - - that would cause me- - it would be detrimental to myself and my family.

The Court:          I understand.  And, Mr. Edwards, I'm sure you have discussed all that with her.

Mr. Edwards:       Oh, Your Honor, yes, and I think this really is a classic *Alford* plea where she fully understands the defenses, that she is entering this plea based on avoid the consequences of going to trial on the felony offense, yes.

The Court:          And do you understand that if you still want to plead guilty under these circumstances that the Court will require that a statement of facts be read into the record to insure that there is a

factual basis to accept you change of plea.  Do you understand that?

Defendant:          Yes, sir.

The Court:          And is your decision based in whole or in part upon the fear of consequences of a jury trial and or your desire to seek a lesser penalty by entering a plea at this time- - and essentially the probation matter also?

Defendant:          Yes, sir.

{¶92}  Later in the hearing, the State of Ohio recited the underlying facts of the case which Appellant pled to as follows:

Through the course of the prior case, Mrs. Ogle was required to wear an ankle monitor that was provided by Greco Electronic Monitoring Company. During the course of the introduction and instructions, Mrs. Ogle was advised she could not submerge the ankle bracelet in water without causing damage to it.  On or about November 25th of last year, the ankle bracelet was submerged in the bathtub to the point that it was no longer functioning and that's the basis for this charge.

The Court:          All right.  And Mr. Edwards, any comment on the facts at this point, sir?

Mr. Edwards:      Your Honor, I think that for the purpose of the *Alford* plea, we'll make no comment on the facts.  Thank you.

{¶93}  In this matter, we find the trial court did not abuse its discretion in accepting Appellant's *Alford* plea.  Appellant entered her plea pursuant to a negotiated agreement.  As such, Appellant essentially waived any arguments regarding her *Alford* plea, but for knowledge and voluntariness.  We note, however, the State read the factual basis into the record, and Appellant did not object to the recitation of facts.  Appellant was

questioned at length as to her understanding of the plea, her constitutional rights, and the process.  Specifically, she was asked if she had discussed any defenses with her counsel.   She was also asked about her reasons for entering her plea.  The trial court also asked numerous questions of which Appellant's responses indicated her knowledge and voluntariness. We find the trial court did not abuse its discretion in accepting her plea and overrule this assignment of error.

{¶94}  Under the second assignment of error in case number 12CA12, Appellant argues the trial court abused its discretion in failing to conduct an evidentiary hearing on the pleading she entitled "motion to set aside judgment entry of sentence and dismiss indictment."

App.R. 3(D) provides in pertinent part as follows:

> The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.

{¶95}  An appellate court need not review the merits of the judgment or order unless it is designated or otherwise referenced in the notice of appeal.  *State v. Browning,* 5th Dist. No. CTS2004-0036, 2004-Ohio-6992, 2004 WL 2955180, ¶ 20; *Schloss v. McGinness,* 16 Ohio App.3d 96, 97-98, 474 N.E.2d 666 (1984); *State v. Perez,* 5th Dist. No. 03CA-107, 2004-Ohio-3646, at ¶ 22.  Here Appellant has

not filed notice of appeal from the August 22, 2012 judgment entry denying her motion to set aside sentence and dismiss indictment. Under appellate case number 12CA12, Appellant only appealed the May 25, 2012 nunc pro tunc order. This Court court could easily find it is without jurisdiction to address the merits of Appellant's argument. However, in the interests of justice, we will proceed further.

**{¶96}** Generally, when a defendant files a Crim.R. 32.1 motion to withdraw a guilty plea, trial courts will conduct an evidentiary hearing; however, trial courts are not always required to do so. *Dotson*, at ¶ 6; *State v. Moore,* 4th Dist. No. 01CA674, 2002-Ohio-5748, at ¶ 17. Here, Appellant did not name her motion a "motion to withdraw plea" and Appellee has not conceded that it was.

**{¶97}** Trial courts need only conduct an evidentiary hearing where the facts, as alleged by the defendant, indicate a manifest injustice would occur if the plea was allowed to stand. Id. Moreover, an evidentiary hearing is not required if the defendant's allegations are "conclusively and irrefutably contradicted by the record." Id. at 18. We also note Appellant never requested a hearing on her motion, and as such, she waives this

argument on appeal.  See *State v. Rodgers,* 8th Dist. No. 95560, 2011-Ohio-2535, 2011 WL 211723, ¶ 34.

**{¶98}**  Based on our resolution of Appellant's assignment of error that the trial court did not err in accepting the *Alford* plea, above, we also find no manifest justice will occur by allowing Appellant's plea to stand. Furthermore, the trial court did not abuse its discretion in failing to conduct an evidentiary hearing in this matter. Appellant's second assignment of error in appellate case number 12CA12 is also overruled.

**{¶99}**  Finally, we turn to Appellant's sole assignment of error in case number 12CA11, that the trial court erred in extending her term of community control an additional two years. Appellant pled to criminal damaging on May 11, 2012.  The motion to impose prison term, which was filed as a result of the vandalism indictment, also came on for hearing on May 11, 2012.  Appellant resolved issues in the two cases on the same day.

 **{¶100}**  "Community control sanction" means a sanction that is not a prison term and that is described in section 2929.15, 2929.16, 2929.17, or 2929.19 of the Revised Code or a sanction that is not a jail term and that is described in section 2929.26, 2929.27, or 2929.28 of the Revised Code. "W]hen a trial court seeks to extend a community control sanction, ** *it must provide the minimum due process rights of notice, hearing and right to

counsel." *State v. Fairbank,* 6th Dist. Nos. WD-06-015, WD-06-016, 2006-ohio-6180, 2006 WL 3378338, ¶16, quoting *State v. Stollings,* 2d Dist. No. 2000-CA-86, 2001 WL 501981, (May 11, 2001), *3. "However, also like revocation hearings, the hearing need not have all the formalities of a criminal trial. The hearing must be sufficient to verity the allegations of violation of community control sanctions." Id; *Jackson*, supra at 55.

**{¶101}** Appellant contends the community control sanction of her sentence had not yet commenced. She urges a characterization of the May 11, 2012 as an unconstitutional resentencing of which she was afforded no notice or opportunity to be heard. However, the record properly reflects the extension of Appellant's community control was pursuant to plea negotiations Appellant voluntarily entered, aided by legal counsel. Appellant pled to criminal damaging on May 11, 2012. The motion to impose prison term, which was filed as a result of the vandalism indictment, also came on for hearing on May 11, 2012. Appellant resolved issues in two cases on the same day. The transcript of the hearing on the State's motion reveals the following exchange took place:

> THE COURT:    All right, I've had an opportunity to hear the prior proceedings. I also have had conversations with counsel with respect to this matter and it's my understanding that the defendant has entered a plea—an Alford plea, to an M3, I believe.

Mr. Edwards:      M2, Your Honor.

THE COURT:      M2?

Mr. Edwards:      Yes, sir.

THE COURT:      And the Judge has imposed probation. Clearly that's a violation of her probation, but I have advised counsel that I don't plan on doing anything further with respect to that other than I believe we've reached an agreement that the probation should be extended from the present three year period of time to five years, and there will be no other sanction with respect to this matter. Is that your understanding, Mr. Edwards?

Mr. Edwards:      That is my understanding, yes, sir.

THE COURT:      Is that your understanding, Ms. Ogle?

DEFENDANT:      Yes, sir.

THE COURT:      All right.

Mr. Gleeson:      Yes, I agree.

THE COURT:      The State's understanding. Okay. Anything further on this matter?

Mr. Gleeson:      Only for formality sake on the record, I would formally withdraw the motion to impose a prison sanction that was previously filed.

{¶102}  The transcript makes abundantly clear Appellant entered a

plea agreement in which she resolved two cases and received a substantial

benefit. The transcript reflects the vandalism charge had been reduced to a

misdemeanor.  Appellant had been sentenced on the misdemeanor charge, a jailable offense, and had essentially received probation.   Appellant agreed to a two-year extension of her community control and her verbal acknowledgement of the terms of her plea bargain and the extension is noted in the transcript. The State's motion to impose prison term on the assault conviction was withdrawn.  Importantly, Appellant was represented by counsel. The record reflects the court verified the understanding of the agreement with Appellant's counsel and the State's attorney.

{¶103}  Furthermore, R.C. 2953.08, appeal as a matter of right-grounds, provides in pertinent part:

> (A)  In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:

> (4)  The sentence is contrary to law.

> (D)(1)  A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.

{¶104}  Community control was imposed as part of Appellant's sentence for felony assault.  It was imposed pursuant to plea negotiations which also resolved a misdemeanor charge.  Community control as part of a felony sentence may not exceed five years.  R.C. 2929.15(A)(1). Similarly,

community control as part of a misdemeanor sentence may not exceed five years.  R.C. 2929.25(2). The record reflects this was an agreed sentence and our review indicates it is not contrary to law. We agree Appellant waived her right to appeal. As such, we affirm the judgment of the trial court and overrule this assignment of error.

Appellate case number 12CA19

ASSIGNMENTS OF ERROR

I.  THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AS A MATTER OF LAW IN DENYING HER A TRIAL BY WAY OF ITS AUGUST 6, 2012 ENTRY.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AS A MATTER OF LAW IN DENYING HER MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL BY WAY OF ITS AUGUST 30, 2012 ENTRY.

Supplemental facts

{¶105}  Appellant filed a Crim. R. 33(B) motion for leave to file a motion for new trial on August 2, 2012.  In her memorandum of support, Appellant argued a new affidavit presented by Trent Woodgeard, contained testimony which differed dramatically from the testimony Woodgeard gave

at the assault trial. [10]  She further argued she was unavoidably prevented from discovering the affidavit in order to file a timely motion for new trial.

{¶106}  The trial court filed an entry on August 6, 2012 denying the motion for the reason that Appellant did not provide "proof of differing testimony."  The trial court's entry also indicated if differing testimony was provided, the court would reconsider the request.  Upon receipt of the August 6, 2012 entry, Appellant filed a motion for an entry clarifying the August 6th entry.  On August 27, 2012, the trial court filed a decision clarifying the August 6th Entry.

{¶107}  On August 29, 2012, Appellant filed a second motion for leave, again utilizing the newer affidavit of Trent Woodgeard. On August 30, 2012, the trial court denied Appellant's motion for leave a second time. Under this appellate case number, Ogle appeals the August 6, 2012 and August 30, 2012 entries denying her motions for leave.

A. STANDARD OF REVIEW

{¶108}  The 10th District Court of Appeals has held an abuse of discretion standard is to be applied in reviewing a court's denial of a motion for leave to file a motion for new trial.  *State v. Anderson,* 10th Dist. No. 12AP-133, 2012-Ohio-4733, 2012 WL 4848949, at ¶ 9, citing *State v.*

---

[10] Appellants have filed a civil lawsuit in the United States District Court for the Southern District of Ohio. Woodgeard's affidavit containing alleged "dramatically differing testimony" was filed in the federal court case.

*Townsend,* 10th Dist. No. 08AP-371, 2008-Ohio-6518, 2008 WL 5196493, ¶ 8.  In addition, "[I]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Anderson,* supra, quoting *State v. Morris,* 132 Ohio St. 3d 337, 972 N.E.2d 528 (2012), at  ¶ 14. We will consider Appellant's two assignments of error under this case number jointly.

### B. LEGAL ANALYSIS

{¶109}  Appellant argues that in her August 2, 2012 and August 29, 2012 Crim. R. 33(B) motions, she was requesting leave pursuant to the rule and  the trial court erred by failing to follow a two-step process. She asserts the only decision before the trial court upon filing of her motions was to determine whether or not she had demonstrated she was unavoidably prevented from timely filing a motion for new trial and discovering the allegedly new evidence, i.e., the affidavit of Woodgeard filed in the federal court case. She concludes the trial court erred since it made no finding that she was unavoidably prevented from discovering Woodgeard's  affidavit within the 120-day period prescribed by Crim.R. 33(B).  Appellant has misinterpreted the rule.

**{¶110}** Crim.R. 33(B) imposes the following requirements for the filing of a motion for new trial as follows:

Motion for new trial; form time. Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where ha trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

**{¶111}** In *State v. Valentine,* 11th Dist. No. 2002-P-0052, 2003-Ohio-2838, 2003 WL 21267813, the trial court summarily overruled appellant's delayed motion for new trial. Valentine failed to offer any explanation as to why he was unavoidably delayed from discovering the proffered evidence. On appeal, Valentine argued the trial court had a duty to first determine if he was unavoidably prevented from discovering the new evidence within the 120-day time

frame. The appellate court concluded it would have been better practice to clearly state the basis for overruling the motion, but under the facts, the trial court did not abuse its discretion.

{¶112}  In *Anderson*, supra, the trial court denied appellant's motion for leave for the reasons that (1) the evidence was not "newly discovered" and, (2) the motion was not timely.  The trial court did not issue an order stating that appellant had been unavoidably prevented from timely filing a motion for new trial.  The appellate court, as in *Valentine,* concluded under the facts of the case, the trial court did not abuse its discretion by its implicit findings and, further, did not abuse its discretion in refusing to issue an order recognizing appellant had been unavoidably prevented from discovering the evidence at issue within the 120-day time period of Crim.R.33(B).

{¶113}  In the case sub judice, the trial court denied the motion the first time it was presented.  The trial court stated:

> Defendant has requested this Court to grant her a new trial pursuant to Crim. R. 33(B).  Defendant asserts that the "victim" witness has provided testimony in an unrelated case that substantially differs from the testimony he gave a Defendant's trail. (sic.)  The Defendant has not provided this Court with any proof of the differing testimony.  The request is denied.  However, if the Defendant provides this Court with the transcripts of the differing testimony the Court will consider the request.

{¶114} In Appellant's second motion, she attached Woodgeard's affidavit but failed to attach the trial transcripts. The trial court had nothing to compare to the affidavit of Woodgeard. In denying the second motion for leave, the trial court stated:

> The Court on two previous occasions advised the defendant it will not consider her motion for leave without all evidentiary matter supporting her motion being attached to the Motion for Leave. The Defendant has provided the affidavit off (sic.) Officer Woodgeard but has not provided a transcript of the trial testimony that she believes differs from the affidavit. The Motion is denied.

{¶115} Standing alone, with no further explanation as presumably would be demonstrated by the trial transcripts, the trial court had no basis on which to conclude that the affidavit was, in fact, newly discovered evidence. Further, Appellant put forth no clear and convincing proof that she was unavoidably prevented from the discovery of the alleged new evidence. Without clear and convincing proof, the trial court is unable to make a specific finding or order.

{¶116} It appears by the attempts to give guidance as to the filing of the motions for leave, the trial court was not completely unsympathetic to Appellant's cause. We can find no abuse of discretion in the denial of Appellant's motions for leave. These

assignments of error are also overruled.  The judgment of the trial court under this appellate case number is also affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,

BY:  _____

Matthew W. McFarland
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**