[Cite as *State v. Kessinger*, 2014-Ohio-2496.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 13CA25 |
| v. | : | |
| | : | DECISION AND |
| BRANDON KESSINGER, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Released: 06/03/2014 |

APPEARANCES:

Christine D. Tailer, Georgetown, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.

Hoover, J.

{¶ 1} Appellant herein and defendant below, Brandon Kessinger, appeals the judgment of the Highland County Court of Common Pleas, where a jury found him guilty of Assault on a Peace Officer, a fourth degree felony, in violation of R.C. 2903.13(C)(5). The trial court sentenced appellant to 17 months for the count of Assault on a Peace officer, in addition to 936 days remaining on his post-release control for an earlier conviction. Kessinger presents three assignments of error. First, appellant argues that the trial court erred when it overruled his Crim.R. 29 motion for acquittal. Second, appellant contends the trial court improperly instructed the jury. Lastly, appellant argues that he was not afforded effective assistance of counsel. For the following reasons, we overrule appellant's assignments of error and affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 6, 2012, appellant Brandon Kessinger was driving around the residence of his first cousin, Daniel Pack. According to Kessinger, he drove around Pack's house four or five times, revving his engine when he passed. Kessinger was taunting Pack. Eventually, Pack came out of his house; and the two began to argue.

{¶ 3} In response to Kessinger's actions, Pack walked over to the neighboring home of the Village of Lynchburg Police Chief Timothy Heizer. Pack told him about the car going up and down the street. Chief Heizer put on his police uniform and returned outside in front of Pack's house. As Pack and Chief Heizer were talking, Kessinger began to circle back again. This time, Kessinger had turned off his headlights and began to rev his engine again.

{¶ 4} At that point, Chief Heizer saw the green Ford Explorer approaching. Chief Heizer began to station himself in front of Pack's driveway, signaling the vehicle to stop by waving his flashlight. Then, the vehicle began to accelerate; and Chief Heizer continued to order the vehicle to stop. Chief Heizer pulled his firearm and began to step towards the driveway. He discharged the firearm at the car. According to Chief Heizer, the vehicle barely missed him.

{¶ 5} Pack provided a similar account of the events. He testified that Chief Heizer stepped onto the roadway waving his flashlight as the Explorer started towards his house accelerating. Pack testified that Kessinger's vehicle was within "two to three" feet from striking Chief Heizer.

{¶ 6} Pack's girlfriend, Tiffany Norris, was at Pack's residence that night; and she also offered a similar account of the events. According to Ms. Norris, Chief Heizer

stepped into the road and shined his flashlight on Kessinger. Norris testified, "He [Kessinger] turned his lights on and he floored it."

{¶ 7} Appellant Kessinger took the stand in his own defense and provided his account of the events. Kessinger testified that in the midst of going back around the neighborhood, he turned off his headlights. As he approached Pack's house again, he placed the vehicle in neutral and began to rev his engine, like he had done on previous passes. Kessinger testified that he remembered seeing a light, followed by "a flash of fire." Kessinger felt pain in his leg. After the gunshots started going off, he ducked down. Kessinger testified that he only knew to put the car in drive and "get out of there."

{¶ 8} As Kessinger drove out of the neighborhood toward a friend's house, he drove the Explorer into a ditch. Kessinger's sister, Jessica Quarles, called him after hearing the shooting come across her police scanner. Kessinger told her what had happened and asked her to pick him up. After Quarles picked him up, they called the police and ambulance services.

{¶ 9} Testimony and exhibits admitted at trial demonstrated that Kessinger was driving his girlfriend, Erica Reed's green Ford Explorer. Agent Greg Burri, an investigator employed with the Ohio Attorney General's Office Bureau of Criminal Investigations, observed six bullet holes in the Explorer. Agent Burri also conducted two separate interviews with Kessinger. Burri testified that Kessinger made multiple statements and changed his story during the course of interviews. At first, Kessinger told Burri that he saw two figures, one with a white shirt consistent with Chief Keizer. Later, Kessinger recanted stating that he might have realized it was Chief Heizer after he was shot.

{¶ 10} The jury found Kessinger guilty of Assault on a Peace Officer. The trial court sentenced him to 17 months, in addition to 936 days that remained on his post-release control for an earlier conviction. On October 11, 2013, Kessinger timely filed this appeal.

APPELLANT'S FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL IN THAT THERE WAS INSUFFICIENT EVIDENCE ON WHICH TO BASE HIS CONVICTION.

{¶ 11} In his first assignment of error, appellant Kessinger argues that the trial court erred when it overruled his Crim.R. 29 Motion for Acquittal. Appellant's trial counsel made the motion at the end of the State's case and renewed the motion once the trial concluded. Appellant contends that the State presented no evidence that Chief Heizer was standing in the middle of the road while in the performance of his official duties. Specifically, appellant states the question of whether Chief Heizer was acting in his official duties was simply not posed to Chief Heizer.

{¶ 12} Thus, according to appellant, the State failed to prove that the peace officer in this case acted "***while in the performance of [his] official duties," pursuant to R.C. 2903.13(C)(5). Appellant further asserts that the entire conviction must fail because the trial court did not give the jury any lesser included offense instructions, but rather instructed the jury that appellant was charged with one count of felonious assault with the charge containing the three elements of 1) knowingly 2) causing or attempting to cause physical harm to Chief Heizer and 3) occurring on the specific date in Highland

County, Ohio. Lastly, appellant argues that without this conviction he cannot be sentenced to the 935 days remaining on his post release control sentence.

{¶ 13} The State asserts that a peace officer's duties are defined by statute, rule, regulation or usage and that courts have commonly held that peace officers have a duty to observe and enforce the laws of the state even when they are off duty. The State argues that Chief Heizer was in uniform, in his jurisdiction, and performing a peace keeping function as required of him by state law. The State claims that the jury was properly instructed to first find if appellant was guilty of the lesser offense of assault, and then determine whether the victim was a peace officer acting in the performance of his official duties. Finally, the State contends that because the jury reached the correct conclusion, the sentence, including the 936 days, should be upheld.

### A. Legal Standard

{¶ 14} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace,* 109 Ohio St.3d 255, 2006–Ohio–2417, 847 N.E.2d 386 (2006), ¶ 37. "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt." *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12 citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.* citing *Jackson v. Virginia,* 443

U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶ 15} "Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution." *State v. Warren*, 4th Dist. Ross No. 12CA3324, 2013-Ohio-3542, ¶ 15 citing *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). "A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did." *Id*. citing *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E .2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E .2d 749 (2001).

{¶ 16} R.C. 2903.13(A), codifying the offense of Assault, states: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." R.C. 2903.13(C)(5) further states: "If the victim of the offense is a peace officer ***while in the performance of their official duties, assault is a felony of the fourth degree." In this assignment of error, appellant argues that the State failed to demonstrate that Chief Heizer was in the performance of his official duties.

{¶ 17} The Eleventh District first interpreted the phrase "in the performance of their official duties" in *State v. Duvall*, 11th Dist. Portage No. 95P-0141, 1997 WL 360695 (Jun. 6, 1997). The court stated:

> The Revised Code creates many duties for peace officers to perform
> *without regard to their duty status.* For instance, R.C. 737.11 provides that
> peace officers have a general duty to preserve the peace and enforce all
> criminal laws of the state. Moreover, R.C. 2935.03(A) requires peace

officers to arrest and detain individuals who are found violating state laws within their jurisdiction. R.C. 4506.23 requires that a peace officers [sic] detain an intoxicated individual driving a commercial vehicle "within the jurisdiction of [the peace officer's] appointing authority * * *." In none of these statutory provisions does there appear language limiting these duties to times when the peace officer is officially on duty or "on the clock." See *State v. Clark* (1983), 10 Ohio App.3d 308, 309, 462 N.E.2d 436; *State v. Bischoff II* (Apr. 1, 1986), Hancock App. Nos. 5-84-40, 5-84-41, unreported, citing *Clark, supra.*

*Id.*

{¶ 18} "Accordingly, to determine what comprises a peace officer's "official duties," the court must look at the activities in which the peace officer was engaged when he was assaulted." *Duvall* at *5. "If the peace officer was engaging in a duty imposed upon him by statute, rule, regulation, ordinance or usage, regardless of his duty status, that officer is 'in the performance of [his] official duties' for purposes of R.C. 2903.13(C)(3)." *Id.*

{¶ 19} Several Ohio courts have held that police officers have a continuing obligation to observe and enforce the laws of the state, when off duty and employed as private security detail. *State v. Ogle*, 4th Dist. Hocking Nos. 11CA29, 11CA32, 12CA2, 12CA11, 12CA12, 12CA19, 2013-Ohio-3420, ¶ 30 quoting *State v. Ford*, 12th Dist. Butler No. CA2009–01–039, 2009–Ohio–6046, ¶ 53. *See also*, *State v. Glover,* 52 Ohio App.2d 35, 367 N.E.2d 1202 (10th Dist.1976); *State v. Underwood,* 132 Ohio Misc.2d 1,

830 N .E.2d 1266, 2005–Ohio–2996; State v. Hurley, 4th Dist. Athens No. 1292, 1986 WL 12397 (Oct. 29, 1986).

## B. Analysis

{¶ 20} Here, we must examine the evidence and the circumstances surrounding the events in question to assess whether Chief Heizer was acting in the performance of his official duties. Appellant wants this Court to focus on the fact that nobody asked Chief Heizer at trial if he was acting in the performance of his official duties. Chief Heizer testified that it is not unusual for individuals to come to his house with a complaint. When appellant's trial counsel asked Chief Heizer if he was on duty at the time of these events, Chief Heizer responded that he is always on duty. We cannot solely rely on Chief Heizer's own assessment of whether he was in the performance of his official duties. Our inquiry must focus on the evidence and circumstances surrounding the events in question.

{¶ 21} On the evening of September 6, 2012, Chief Heizer was in his own residence as he did not have an upcoming night shift scheduled. While Chief Heizer was at his home, Pack brought his attention to the disruptive automobile. The evidence shows that after Pack informed Chief Heizer of Kessinger's activities in the neighborhood, Chief Heizer changed into his uniform. Chief Heizer testified that as he and Pack were standing underneath a few streetlights, Kessinger accelerated towards them. Chief Heizer testified, "I started yelling at him, police, stop, police, stop, flashlight in hand, he continued." As previously noted in the statement of facts, Pack, his girlfriend Quarles, and other neighbors provided similar descriptions of the events.

{¶ 22} Although these facts demonstrate that Chief Heizer received the complaint at the time when he was off duty, Chief Heizer responded to the complaint by putting on his uniform and then walking to his neighbor's house to investigate the complaint. Therefore, we find evidence exists that Chief Heizer was in the performance of his official duties as Police Chief when appellant drove his car towards Chief Heizer and Pack. Chief Heizer's actions were attributable to his status as a peace officer. Accordingly, pursuant to our standard of review, we find the evidence sufficient to reasonably support the jury's guilty verdict. We will address appellant's argument regarding the jury instructions in the analysis of his second assignment of error. Appellant's first assignment of error is overruled.

APPELLANT'S SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY AS TO
THE ELEMENTS OF THE OFFENSE OF FELONIOUS ASSAULT ON
A POLICE OFFICER IN VIOLATION OF R.C.2903.13(A),
ENHANCED TO A FELONY BY THE PROVISIONS OF
R.C.2903.13(C).

{¶ 23} In his second assignment of error, appellant argues that the trial court improperly instructed the jury on the count of Assault on a Police Officer. Appellant contends that the trial court failed to give the jury lesser-included offense instructions. Appellant takes issue with the second element of the jury instruction on Assault stating, "causing or attempting to cause physical harm to Chief Tim Heizer." Appellant argues that the victim's status as a peace officer was incorrectly included as an essential element of the initial offense of Assault.  Relying on his first assignment of error, appellant

summarizes that because the State failed to prove Chief Heizer was acting in performance of his official duties, not all of the essential elements of Assault on a Police Officer were proven.

{¶ 24} Appellant's trial counsel failed to object to the instructions that were given to the jury. Thus, we can recognize the error only if it constitutes plain error. "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.), citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

{¶ 25} "When we review a trial court's jury instructions, we may not judge 'a single instruction to a jury * * * in artificial isolation,' but we must view it 'in the context of the overall charge.' " *State v. Stephenson*, 4th Dist. Adams No. 12CA936, 2013-Ohio-771, ¶ 20, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 396, 721 N.E.2d 52 (2000). "Thus, we must consider the jury instructions 'as a whole' and then determine whether

the jury charge probably misled the jury in a manner materially affecting the complaining party's substantial rights." *Id*. As explained further by the Ohio Supreme Court:

> In determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in its relation to, and as it affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results.

*State v. Hardy*, 28 Ohio St.2d 89, 92, 276 N.E.2d 247 (1971).

{¶ 26} "A defective jury instruction does not rise to the level of plain error unless the defendant shows that the outcome of the trial clearly would have been different but for the alleged erroneous instruction." *Dickess* at ¶ 32, citing *State v. Campbell*, 69 Ohio St.3d 38, 41, 630 N.E.2d 339 (1994), and *Cleveland v. Buckley*, 67 Ohio App.3d 799, 805, 588 N.E.2d 912 (8th Dist.1990).

{¶ 27} Under R.C. 2903.13(C)(5), the offense of Assault becomes a felony of the fourth degree, "If the victim of the offense is a peace officer ***while in the performance of their official duties***." First, jury instructions provided that "The law under which the defendant is charged in Count One is entitled Assault and is numbered Ohio Revised Code 2903.13(A)(1)." Then, the trial court instructed the jury as follows: "That the Defendant, did: (1) knowingly (2) cause or attempt to cause physical harm to Chief Tim Heizer and (3) on or about the date alleged in the indictment in Highland County, Ohio."

{¶ 28} A separate instruction was included to address the conviction enhancement in R.C.2903.13(C)(5). The trial court instructed the jury: "If and only if your verdict is guilty as to Count One of the Indictment, you will make an additional finding as to whether the State of Ohio proved beyond a reasonable doubt that the victim of the offense of which you have found guilty was a peace officer."

{¶ 29} The instructions defined "Peace Officer" as: "Peace officer includes a member of the organized police department of a municipal corporation while acting in the performance of their official duties." Appellant takes issue with the phrase "includes a," arguing that the instruction should have limited the definition as an officer who actually is in the performance of his official duty. R.C. 2935.01(B) states: " 'Peace officer' includes, except as provided in section 2935.081 of the Revised Code, a sheriff; deputy sheriff; marshal; deputy marshal; member of the organized police department of any municipal corporation***"

{¶ 30} The jury instruction's definition of "Peace Officer" is derived from R.C. 2935.01(B). The trial court clearly set forth that the jury was to first find defendant guilty or not guilty of the offense of Assault and then proceed to determine if the victim of the assault was a "Peace Officer ***while in the performance of their official duties," which would then make the offense a fourth degree felony.

{¶ 31} Appellant's argument relating to the second element, "causing or attempting to cause physical harm to Chief Tim Heizer," is incorrect. The trial court did not inappropriately include in the second element, the pre-determined fact that Chief Heizer was a peace officer acting in the performance of his official duties. The second element merely identified the alleged victim. The aforementioned additional instruction

clearly charges the jury with the duty to determine whether Chief Heizer was a peace officer acting in the performance of his official duties. If the question was answered in the affirmative, then the assault charge would be enhanced to a felony of the fourth degree.

{¶ 32} Furthermore, even if the language was changed to define a police officer in the strict sense that appellant asserts, he fails to show how the outcome clearly would have been different. Therefore, appellant's second assignment of error is overruled.

APPELLANT'S THIRD ASSIGNMENT OF ERROR

APPELLANT WAS NOT AFFORDED THE EFFECTIVE

ASSISTANCE OF TRIAL COUNSEL.

{¶ 33} In his third assignment of error, appellant sets forth several instances where his trial counsel's performance constituted ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

A. Legal Standard

{¶ 34} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State*

*v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *See Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52 (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other."). In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

## B. Analysis

1. Counsel did not object to the State's leading questions.

{¶ 35} Appellant's sister, Quarles, provided a statement to police on the night of September 6, 2012. On direct examination, the State asked Quarles if appellant told her who had shot him that night. At first, Quarles answered that she did not recall. The State later handed Quarles Exhibit 13, which was her statement to police. Quarles identified the exhibit as her statement. She acknowledged that the statement depicted what her brother told her about who shot him. The State asked her to read the portion of the statement relating to what Kessinger told her that night. Quarles read her statement to the jury stating: "Oh, down here. It said, told me [Quarles] that a cop shot him."

{¶ 36} Appellant contends that the State did not lay the appropriate foundation to refresh its witness's recollection with her police statement. Appellant argues that the State asked Quarles leading questions leading to critical testimony in the State's favor. Appellant states that the content of Quarles' prior statement was clearly admitted for the truth of the matter, that he knew a police officer shot him. Appellant's theory is that the State should have allowed Quarles to read the statement to herself, not to the jury, and

then they could have proceeded to question her based upon her recollection. Appellant

argues that his trial counsel should have objected on the basis of hearsay to the use of

Quarles's statement.

{¶ 37} The State argues that although counsel did not object to the potential

hearsay testimony, the recorded recollection exception would have applied, making the

testimony permissible. Under Evid.R. 803(5), the recorded recollection exception to the

prohibition against hearsay testimony is a memorandum or record (1) concerning a matter

about which a witness once had knowledge (2) but now has insufficient recollection to

enable him to testify fully and accurately (3) shown by the testimony of the witness to

have been made or adopted when the matter was fresh in his memory and to reflect that

knowledge correctly. If admitted, the memorandum or record may be read into evidence,

but may not itself be received as an exhibit unless offered by an adverse party. *State v.*

*Ellison*, 8th Dist. Cuyahoga No. 99422, 2013-Ohio-4909, ¶ 20. The staff notes relating to

Evid.R. 803(5) specify:

> The rule makes explicit the requirement that the foundation for the
>
> introduction of the statement under this exception must be made by
>
> testimony of the witness himself. The assessment of trustworthiness is
>
> thereby focused upon the author and not upon some other person incident
>
> to the event.

*State v. Perry*, 147 Ohio App.3d 164, 174, 768 N.E.2d 1259 (6th Dist.2002).

{¶ 38} After a review of the trial transcript it is clear that the recorded recollection

exception would have applied if defense counsel objected to the State's line of

questioning. The witness, Quarles, indicated that she was "not really sure" if appellant

had told her who shot him. The state presented Exhibit 13, which Quarles identified as her statement taken by police on the night of September 6, 2012. Quarles read excerpts from the statement to the jury and the exhibit was not admitted into evidence. Therefore, even if defense counsel had objected to the State's line of questioning, the objection would have been overruled under Evid.R. 803(5). Accordingly, appellant has failed to prove ineffective assistance of counsel here.

2. Counsel failed to adequately argue the Crim.R. 29 motion for acquittal

{¶ 39} Second, appellant argues that his defense counsel was ineffective when he did not provide any argument in support of the Crim.R. 29 motion. Appellant contends that his counsel failed to provide any evidence concerning if Chief Heizer was in the performance of his official duties. In our analysis of the first assignment of error, we have already determined that evidence existed showing Chief Heizer to be in the performance of his official duties on the night of September 6, 2012. Therefore, appellant cannot prove he was prejudiced in that regard.

3. Counsel failed to object to the jury instructions.

{¶ 40} Appellant also contends that his trial counsel was ineffective when he did not object to the jury instructions. Similar to the previous issue, we have already determined, in our analysis of appellant's second assignment of error, that the instructions given to the jury were proper and appellant failed to prove the instructions prejudiced his defense. We are aware that the "clearly would have been different" language used in plain error analysis establishes a slightly greater burden than the "reasonable probability" language used in evaluating ineffective assistance claims. Nonetheless, we conclude that appellant has still failed to prove the outcome would have been different. Therefore, we

cannot find counsel's failure to object to the court's jury instructions constitutes ineffective assistance of counsel.

4. Counsel failed to subpoena a critical witness.

{¶ 41} Next, appellant argues that his trial counsel was ineffective in failing to subpoena a potential witness, Tyler Cloud. It is appellant's position that Cloud was a material witness to his defense; and his trial counsel should have attempted to locate him or at least take his deposition.

{¶ 42} Absent a showing of prejudice, the mere failure to subpoena witnesses does not render trial counsel's assistance ineffective. *State v. Dotson*, 4th Dist. Washington No.99CA33, 2001-Ohio-2507, *9; *State v. Coulter*, 75 Ohio App.3d 219, 230, 598 N.E.2d 1324, 1331 (12th Dist.1992). To demonstrate prejudice, the defendant must establish that the witness's testimony would have significantly assisted the defense and that the testimony would have affected the outcome of the case. See, *e.g., Coulter, supra;* State v. Reese, 8 Ohio App.3d 202, 203, 456 N.E.2d 1253, 1254 (1st. Dist.1982)

{¶ 43} Here, appellant does not provide any evidence as to what testimony and/or evidence Tyler Cloud would have provided. Therefore, appellant cannot demonstrate that the outcome of the trial might have been different if his defense counsel had subpoenaed Cloud.

5. Counsel erred when he allowed appellant to testify in his own defense.

{¶ 44} The next assertion of ineffective assistance of counsel concerns the manner in which trial counsel allowed appellant to testify in his own defense. Appellant states that trial counsel erred in several ways. Appellant argues that trial counsel failed to request appellant go on the record and express to the court his understanding of the

impact of his testimony. More importantly, appellant contends that his defense counsel failed to object to the admission of his prior conviction, where the conviction should have been excluded under Evid.R. 609 and Evid.R.403 because of its prejudicial nature.

{¶ 45} On October 10, 2013, the day of the trial, Kessinger, through his trial counsel filed a Motion in Limine, requesting that "***the Court instruct all witnesses that they cannot speak to Defendant Brandon Kessinger's prior conviction of Involuntary Manslaughter." The motion continued: "However, the Defendant understands that if he chooses to take the stand and testify, that the same may be disclosed at that time."

{¶ 46} Before Kessinger took the stand for direct examination, the Judge held a side bar, where he cautioned defense counsel of the need for Kessinger to understand the consequences of testifying. Defense counsel stated: "I have told him [Kessinger] that his past will come into the record."

{¶ 47} The State began its cross examination of Kessinger with the following:

Q. [Prosecuting attorney] Mr. Kessinger, have you been convicted of a

felony within the past ten years?

A. [Kessinger] Not in the past ten years, no.

Prosecution immediately requested a side bar, which proceeded as follows:

Ms. Collins: He needs to be told that it's ten years from the disposition, not

ten years from the date of conviction.

The Court: Well, you asked the question wrong, you guys always ask the

question wrong. What you should say is, isn't it true that on such and such

day in such and such a court, case number bla bla bla you were convicted,

and if its within the ten years of discharge or whatever then you can

answer, then you don't run into this problem. So, you guys need to learn to ask the right question. So, rephrase the question.

The prosecution continued:

Q. [Prosecuting attorney]: Yes, Your Honor. Give me just a second here, Your Honor. Mr. Kessinger, were you convicted of involuntary Manslaughter in Erie County, case number 2000 CR 314?

A. [Kessinger]: Yes, sir.

Q. [Prosecuting attorney]: And were you sentenced to ten years in prison for that?

A. [Kessinger]: Yes, sir.

{¶ 48} Appellant Kessinger argues that his trial counsel should have objected to this line of questioning as the admission of the conviction, and particularly the term of confinement was not admissible under Evid.R. 609(A)(2) and Evid.R. 403(A). The State asserts that although the trial court did not address the balancing test in Evid.R. 609, the questioning regarding the prior conviction was harmless in the view of the overwhelming evidence of appellant's guilt in this case.

{¶ 49} Evid.R 609(A)(2) states:

For the purpose of attacking the credibility of a witness:

(2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the

danger of unfair prejudice, of confusion of the issues, or of misleading the

jury.

Additionally, Evid.R. 609(B) further places a time limit on the convictions that may be

used for impeachment purposes:

(B) Time limit

Evidence of a conviction under this rule is not admissible if a period of

more than ten years has elapsed since the date of the conviction or of the

release of the witness from the confinement, or the termination of

community control sanctions, post-release control, or probation, shock

probation, parole, or shock parole imposed for that conviction, whichever

is the later date, unless the court determines, in the interests of justice, that

the probative value of the conviction supported by specific facts and

circumstances substantially outweighs its prejudicial effect.

{¶ 50} Here, Kessinger's prior conviction clearly falls within the guidelines of

Evid.R. 609. The questions asked on the State's cross-examination of Kessinger revealed

the conviction and the term of imprisonment. The pre-trial Motion in Limine regarding

the conviction further establishes that Kessinger's trial counsel anticipated the conviction

would be admissible if Kessinger were to testify.

{¶ 51} Appellant argues that his trial counsel should have objected to the line of

questioning because exclusion of the conviction is mandatory considering the unfair

prejudicial nature of the conviction. We do not agree with appellant's conclusion. "Under

Evid.R. 609(A)(2), a prosecutor can cross-examine as to 'the name of the crime, the time

and place of conviction, and sometimes the punishment.' " *State v. Topping*, 4th Dist.

Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 51 quoting 1 Giannelli & Snyder, Evidence (2d Ed.2001) 473, Section 609.15. The transcript shows that the trial court was well aware of the situation regarding the prior conviction. In the side bar, the trial court instructed the prosecutor to rephrase the question in an appropriate manner. The prosecutor asked a total of three questions concerning the prior conviction, as we noted above establishing the conviction and the time served. This evidence does not establish, with a reasonable probability, the outcome would have been different if defense counsel had objected to the prosecution's line of questioning. Therefore, we overrule this assertion of ineffective assistance of counsel.

6. Counsel erred and the trial court abused its discretion when appellant was not appointed new counsel.

{¶ 52} Appellant's final assertion of ineffective assistance of counsel concerns the manner in which defense counsel presented his Motion to Withdraw. On September 9, 2013, appellant's appointed counsel filed a Motion for Leave to Withdraw, informing the trial court that Kessinger had requested counsel to withdraw. Kessinger filed a handwritten letter, dated September 1, 2013 and time stamped September 10, 2013, requesting that Mr. Koogler be removed as his counsel. In the letter, Kessinger expressed concerns regarding the administration of a polygraph exam and the questions that would be asked. Kessinger wrote that he did "***not feel comfortable discussing things with Mr. Koogler, nor do I feel that I am being adequately represented in this matter." It appears that appellant also argues that the trial court abused its discretion when it did not appoint him new counsel.

{¶ 53} A pre-trial hearing on the motion was heard on September 9, 2013. At the hearing Kessinger reiterated his concerns with the polygraph test. Kessinger told the trial court that he asked Mr. Koogler about his opinion of the case twice and both times he gave different answers. Kessinger also expressed concern about Mr. Koogler's status as President of City Council and the potential conflict regarding Chief Heizer's involvement in the case.

{¶ 54} In its decision overruling appellant's motion for new counsel, the trial court stated:

> Since the [polygraph] test was not administered the Defendant has not
> been prejudiced in any way and his concerns that counsel's performance
> was deficient is without merit. He also stated that counsel had given him
> different assessments of the case at different times in the case, but the
> Court finds that this is not grounds for removal. Counsel stated that he felt
> that he could still represent the Defendant.

"A trial court's decision regarding a request for substitute counsel is governed by an abuse of discretion standard." *State v. Carter*, 4th Dist. Ross No. 0CA3169, 2010-Ohio-6316, ¶ 44. (Citations removed). An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 55} "The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel. If the defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record." *Carter* at ¶ 45 quoting *State v. Smith*, 4th Dist. Lawrence No.

98CA12, 1999 WL 4907, *2 (Dec. 29, 1998) citing *State v. Deal*, 17 Ohio St.2d 17, 20, 244 N.E.2d 742 (1969). "Although the inquiry may be brief and minimal, the inquiry must be made." *Id.* (Citations omitted). Grounds for obtaining newly appointed counsel exist only upon a "showing of good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust result." *Id.* quoting *State v. Blankenship*, 102 Ohio App.3d 534, 558, 657 N.E.2d 559 (12th Dist.1995). "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus. If a defendant can show good cause, a trial court's "failure to honor the defendant's timely request amount[s] to a denial of effective assistance of counsel." *Carter* at ¶ 45 quoting *State v. Pruitt*, 18 Ohio App.3d 50, 57, 480 N.E.2d 499 (8th.Dist. 1984).

{¶ 56} Here, the trial court held a hearing to hear Kessinger's argument regarding Mr. Koogler's motion to withdraw. The trial court determined that appellant's primary concern regarding the polygraph was alleviated because the test was not administered. Additionally, the court found that his attorney's multiple assessments of his case were not grounds for removal. After reviewing Kessinger's letter to the court and the transcript of the hearing, we find the trial court did not abuse its discretion in denying appellant's request for a new attorney.

{¶ 57} A majority of appellant's complaints in the letter and at the hearing focused on the polygraph examination. Since the examination was not administered, appellant cannot establish prejudice. Mr. Koogler stated that he felt he could continue to

represent Kessinger as long as the their ability to communicate would not be affected. It is clear that a defendant is not entitled to an attorney of his choosing, only one with the ability to competently represent the defendant. Accordingly, we do not find the trial court abused its discretion. Furthermore, appellant has failed to demonstrate that his trial counsel was ineffective with respect to his Motion to Withdraw.

{¶ 58} Having addressed each of appellant's assertions of ineffectiveness of counsel and finding no merit, we overrule appellant's third assignment of error. In conclusion, we overrule appellant's three assignments of error. The judgment of the Highland County Court of Common Pleas is affirmed.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment & Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

By:_____ _____
Marie Hoover, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.